**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jeffrey GASKINS, aka Jeffery Gaskin, Defendant–Appellant.**

No. 87–5138.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 2, 1988.

Decided June 17, 1988.

Gail Ivens, Deputy Federal Public Defender, Los Angeles, Cal., for defendant-appellant.

John H. Feiner, Asst. U.S. Atty., Major Narcotics Section, Los Angeles, Cal., for plaintiff-appellee.

Before WALLACE, ALARCON and BEEZER, Circuit Judges.

WALLACE, Circuit Judge:

Gaskin appeals his conviction following a jury trial for possession of methamphetamine and manufacturing methamphetamine in violation of 21 U.S.C. § 841(a)(1).[1]

On appeal, Gaskin argues that we should reverse his conviction because the district court's additional instruction on aiding and abetting, given in response to a question from the jury, violated Rule 30 of the Federal Rules of Criminal Procedure and prejudiced him because the court did not allow Gaskin's counsel to argue against an aiding and abetting theory to the jury. Gaskin also argues that the district court violated his sixth amendment right to a unanimous verdict when it accepted the verdict notwithstanding a note which allegedly revealed juror dissension on the manufacturing count. The district court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. Because we find that the Rule 30 violation requires reversal of both counts, we do not reach the question whether Gaskin's sixth amendment rights were violated in this case.

I

A police officer detected a strong odor of ether, which is used to manufacture methamphetamine, near Gaskin's home. The police officer advised the Drug Enforcement Administration (DEA).

DEA Special Agent Barkett investigated and also detected the odor. He observed Gaskin leave the residence.

Armed with a search warrant, Barkett and other federal and state law enforcement officers subsequently approached Gaskin's residence, and smelled a particularly strong ether odor. When Barkett knocked and announced the search, no one answered. After a forced entry, Barkett encountered Gaskin five feet from the door. Initially Gaskin did not believe that Barkett was with the DEA, because someone told him earlier in the day that he would be the target of a "rip-off" that evening.

During the search, the odor of ether was so strong within the house that some officers required respirators. In the garage,

---

1. 21 U.S.C. § 841(a)(1) provides:

(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; ...

the officers found a large-scale, operational methamphetamine laboratory, a chemical formula for manufacturing methamphetamine, and a daily log book containing a daily record of the manufacturing process. They also found receipts from the establishment where Gaskin made his earlier purchase for chemicals and equipment, including a receipt for ether and for a thermometer. In addition, they found a little over three thousand grams of methamphetamine.

Following his arrest, Gaskin waived his rights and stated that the laboratory and the drugs belonged to Sanders, his brother-in-law. Gaskin claimed that his fingerprints were on the laboratory equipment because he had attempted to disassemble the laboratory when he learned what Sanders was doing and that he had also received the chemical burns on his hands at that time. He claimed that he did not participate in the manufacturing, but instead had merely "kept his eyes closed when he shouldn't have" because Sanders had assured him that "good fortune" would come Gaskin's way "if he did not see anything or say anything."

During the trial, the district judge held a conference with counsel to decide which instructions he would give to the jury. The government requested an instruction on aiding and abetting. Gaskin's counsel stated that if the court decided to give an aiding and abetting instruction, the court should also give a special unanimity instruction informing the jurors that they must be unanimous as to the theory of Gaskin's guilt—either as a principal or an aider and abettor. The district court suggested giving neither and both counsel agreed.

Following closing arguments, the court instructed the jury that possession with intent to distribute methamphetamine and manufacturing methamphetamine were specific intent crimes and that the government had to prove beyond a reasonable doubt that Gaskin intended to commit these crimes. The court also instructed the jury that the verdict had to be unanimous in order to convict Gaskin.

After the jury deliberated for a day and one-half, it sent the following note to the court:

Is it possible to have a clarification of the word "manufacturing"? Would we be correct [to assume] under the law that a person allowing or providing a physical space for a product to be produced, and/or being aware of what the product is and/or having agreed to accept a payment of any nature constitute being a party to the manufacturing? What level of involvement constitutes manufacturing?

The court conferred with counsel about how to respond to the jury's question. The government urged the court to give an aiding and abetting instruction. Gaskin's counsel objected to the instruction because she had not addressed the aiding and abetting theory in her argument to the jury. The judge disagreed and stated that he believed her entire argument was that Gaskin was merely present at his house while the methamphetamine was being produced. Gaskin's counsel objected to any further instructions but stated that if the court intended to give an aiding and abetting instruction, the court should also give an instruction explaining that Gaskin's "mere presence" would not constitute aiding and abetting.

The court decided to give the aiding and abetting instruction as well as a mere presence instruction. The court recessed for the evening, but requested counsel to brief the issue whether a special unanimity instruction should accompany the two new instructions concerning aiding and abetting, and, if so, to prepare a proposed special unanimity instruction.

The following morning the government submitted a proposed instruction on aiding and abetting and mere presence and a brief arguing that no special unanimity instruction was necessary. Gaskin's counsel did not submit an instruction, but instead renewed her objection to the aiding and abetting instruction on the grounds that the supplemental instruction would violate Rule 30's requirement that the court "inform counsel of its proposed action [con-

cerning requested jury instructions] *prior to* their arguments to the jury." Fed.R. Civ.P. 30 (emphasis added). She contended that it would be error to give the new instruction without giving her the "opportunity to argue the facts regarding aiding and abetting from mere presence...." She therefore requested leave to reopen closing argument. She also requested that the court instruct on unanimity, but did not submit an instruction. The court denied both requests.

Court was then convened and the judge gave the following instruction to the jury:

> The guilt of the Defendant may be established without proof that the accused personally did every act constituting the offense charged. Who ever commits an offense against the United States or aid, abets, counsels, commands, induces or procures its commission is punishable as a principal; meaning, punishable the same as [sic] person who does the criminal act.
>
> In other words, every person who willfully participates in the commission of crime may be found to be guilty of that offense. Participation is willful if done voluntarily and intentionally and with a specific intent to do something the law forbids, that is to say, with bad purpose either to disobey or disregard the law.
>
> In order to aid and abet another to commit a crime, it is necessary that a Defendant willfully associate himself in some way with a criminal venture and willfully participate in it as he would in something he wishes to bring about, that is to say, that he willfully seeks by some act or omission of his to make a criminal venture succeed.
>
> You, of course, may not find the Defendant guilty unless you find beyond a reasonable doubt that every element of the crime you find elsewhere in the instruction was committed by some person or persons and that the Defendant participated in the commission of the crime.
>
> A Defendant's mere presence at the scene of the crime and knowledge that a crime has/is being committed is not sufficient to establish that an accused aided and abetted the commission of a crime, unless you find beyond reasonable doubt that he was a participant, and not merely a knowing spectator.

The jury foreman stated that the instruction helped to answer the jury's question.

A few minutes after receiving the instruction, the jury informed the court that it had reached a unanimous verdict. As to count one, the jury concluded that Gaskin was not guilty of possession of methamphetamine with intent to distribute, but was guilty of the lesser included offense of possession of methamphetamine. As to count two, the jury concluded that Gaskin was guilty of manufacturing methamphetamine. The jury, however, attached a note to the verdict signed by six jurors which stated: "Although we found Mr. Gaskin guilty of manufacturing methamphetamine, we feel that he was indirectly involved."

The judge stated, out of the jury's presence, that he believed that six jurors found Gaskin guilty on an aiding and abetting theory on count two. The government agreed, but thought no additional instruction was necessary. Gaskin's counsel argued that the note demonstrated that the jury did not unanimously agree on the facts underlying their verdict, and therefore needed to receive a special unanimity instruction and be required to deliberate further. Although the judge agreed that the jury was not necessarily unanimous as to the underlying facts, he refused to reinstruct the jury, stating "what difference does that make because, if you're an aider and abetter, [you are] a principal or treated as a principal anyway."

After reconvening court, the judge asked the foreman if the jury had reached a unanimous verdict. The foreman responded "yes." The judge then stated his concern about the note that six jurors signed regarding count two and emphasized the importance that the verdict represent the individual opinion of each juror. Following this statement the court had the clerk read the verdicts aloud. The jury was polled and each juror stated that the verdict represented his or her own individual verdict.

Gaskin subsequently moved for a new trial, which was denied. Gaskin filed a timely notice of appeal.

## II

Gaskin argues that the district judge violated Rule 30 of the Federal Rules of Criminal Procedure when he instructed the jury on aiding and abetting after expressly stating at the Rule 30 conference that he would not do so. Gaskin argues that this alleged violation prejudiced him because his counsel relied on the judge's statement and tailored her closing argument accordingly. The government does not argue that the district court complied with Rule 30. Rather, it argues that the instruction was not prejudicial because it did not insert a new issue into the case, but simply clarified the instructions at the jury's request. The government also argues that, in any event, Gaskin's counsel devoted her entire closing argument to refuting the contention that Gaskin was guilty of manufacturing methamphetamine as a principal or as an aider and abettor. The government does not specifically address Gaskin's argument that the Rule 30 violation also requires reversal of the possession count.

Rule 30 provides, in part:

> At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. At the same time copies of such requests shall be furnished to adverse parties. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed.

The object of the rule is to require the district court to inform the trial lawyers in a fair way what the instructions are going to be in order to allow counsel the opportunity to argue the case intelligently to the jury. *Harvill v. United States*, 501 F.2d

295, 297 (9th Cir.1974) (per curiam) (*Harvill*). Failure to comply with Rule 30 is reversible error, however, "only if counsel's closing argument was prejudicially affected thereby." *United States v. McCown*, 711 F.2d 1441, 1452 (9th Cir.1983) (*McCown*), *quoting Harvill*, 501 F.2d at 296–97; *United States v. Wycoff*, 545 F.2d 679, 683 (9th Cir.) (*Wycoff*), *cert. denied*, 429 U.S. 1105, 97 S.Ct. 1135, 51 L.Ed.2d 556 (1977).

■ We have not had occasion to define "prejudicially affected thereby." The Tenth Circuit has, however, explained that a district court's failure to comply with Rule 30 prejudices a party if the party was unfairly prevented from arguing his or her defense to the jury or was substantially misled in formulating and presenting arguments. *United States v. Smith*, 629 F.2d 650, 653 (10th Cir.) (*Smith*), *cert. denied*, 449 U.S. 994, 101 S.Ct. 532, 66 L.Ed.2d 291 (1980). We agree with the Tenth Circuit's definition, and conclude it is consistent with our prior cases. *McCown*, 711 F.2d at 1452 (district court did not prejudice defendant by giving an entrapment instruction following the close of argument because the additional instruction on entrapment was superfluous due to the lack of substantial evidence of entrapment); *Wycoff*, 545 F.2d at 683 (district court did not prejudice defendant by giving an additional instruction on excuse because defendant had not produced any evidence from which he could have argued that his crime was excusable); *Harvill*, 501 F.2d at 296–97 (effectiveness of counsel's argument impaired where district court changed its instructions after assuring counsel it would instruct on specific intent and new instructions effectively repudiated part of counsel's argument).

The government responds that the district court had the discretion to give an additional instruction and that the instruction given did not prejudice Gaskin because an aider and abettor is a principal under 18 U.S.C. § 2.[2] In support of this argument,

---

2. 18 U.S.C. § 2 provides:

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or

the government points to the Fifth Circuit's statement in *United States v. Megna,* 450 F.2d 511, 512 (5th Cir.1971) *(Megna* ), that "all indictments for substantive offenses must be read as if the alternative provided by 18 U.S.C. § 2 were embodied in the indictment."

We agree that the district court had the discretion to give the additional instruction in order to respond to the jury's question. *See United States v. Hayes,* 794 F.2d 1348, 1352 (9th Cir.1986) (district court has responsibility to eliminate confusion when jury asks for clarification of a particular issue), *cert. denied,* — U.S. —, 107 S.Ct. 1289, 95 L.Ed.2d 828 (1987); *United States v. Collom,* 614 F.2d 624, 631 (9th Cir.1979) (necessity, extent, and character of additional instructions are within the sound discretion of the district court), *cert. denied,* 446 U.S. 923, 100 S.Ct. 1862, 64 L.Ed.2d 278 (1980); *United States v. Glickman,* 604 F.2d 625, 631–32 (9th Cir.1979), *cert. denied,* 444 U.S. 1080, 100 S.Ct. 1032, 62 L.Ed.2d 764 (1980). We also agree that section 2 does not define a new or distinct offense, *see Londono–Gomez v. INS,* 699 F.2d 475, 476–77 (9th Cir.1983); *United States v. Oates,* 560 F.2d 45, 54 (2d Cir. 1977) *(Oates* ), that the proof of aiding and abetting must encompass the essential elements of the underlying substantive crime, *United States v. Vaccaro,* 816 F.2d 443, 453–54 (9th Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 295, 87 L.Ed.2d 255 (1987); *United States v. Short,* 493 F.2d 1170, 1172 (9th Cir.) *(Short* ), *modified,* 500 F.2d 676 (9th Cir.), *cert. denied,* 419 U.S. 1000, 95 S.Ct. 317, 42 L.Ed.2d 275 (1974); *Hernandez v. United States,* 300 F.2d 114, 123 (9th Cir.1962), and that the intent regarding the underlying substantive offense required to convict a defendant as an aider and abettor is the same intent necessary to convict him as a principal. *See United States v. Andreen,* 628 F.2d 1236, 1245 (9th Cir.1980); *Short,* 493 F.2d at 1172. Thus, we agree with the government that "an aider and abettor is a principal," *Pang v. United States,* 209 F.2d 245, 246 (9th Cir. 1953), that a principal is an aider and abettor, *Oates,* 560 F.2d at 55 & n. 6, and that "all indictments for substantive offenses must be read as if the alternative provided by 18 U.S.C. § 2 were embodied in the indictment." *Megna,* 450 F.2d at 512.

Nonetheless, arguments based on convicting a defendant as a principal or convicting a defendant as an aider and abettor are based on two conceptually different theories. *See United States v. Companion,* 508 F.2d 1021, 1022 (9th Cir. 1974) (per curiam); *see also Short,* 493 F.2d at 1171. The difference in theories becomes apparent when one analyzes the elements necessary to convict a defendant under a given theory. The elements necessary to convict an individual under an aiding and abetting theory are (1) that the accused had the specific intent to facilitate the commission of a crime by another, (2) that the accused had the requisite intent of the underlying substantive offense, (3) that the accused assisted or participated in the commission of the underlying substantive offense, and (4) that someone committed the underlying substantive offense. *See United States v. McDaniel,* 545 F.2d 642, 644 (9th Cir.1976) ("A defendant to be an aider and abetter must know that the activity condemned by the law is actually occurring and must intend to help the perpetrator."); *Short,* 493 F.2d at 1172 ("It is the aider and abettor's state of mind, rather than the state of mind of the principal, that determines the former's liability.... Thus the jury must be told that it must find that [the aider and abettor] knew that [the principal] was armed and intended to use the weapon and intended to aid him in that respect."); *see also United States v. Raper,* 676 F.2d 841, 849 (D.C.Cir.1982) (discussing the four factors); W. LaFave & A. Scott, 2 Substantive Criminal Law, § 6.7, at 141–45 (1986) (discussing the mental state necessary for conviction as an aider and abettor and concluding that an aider and abettor must have the intent to aid or encourage another to commit what he knows to be criminal conduct as well as the mental state necessary for the underlying substantive offense). On the other hand, the elements necessary to convict an individual under the theory that he was the principal

another would be an offense against the United States, is punishable as a principal.

simply are (1) that he committed all of the acts as defined in the underlying substantive offense, and (2) that he committed these acts while possessing the requisite mental state. Thus, the government's argument that an aider and abettor is a principal does not provide an answer to the issue before us because the argument ignores the different elements the government must prove under the two theories and ignores the different arguments that the defense may make concerning the elements of the theory involved.

■ These different elements become significant to our decision because, having found a Rule 30 violation, we must determine whether there was prejudice. Essentially, we must decide whether the district judge's decision to give the aiding and abetting instruction during jury deliberations, after initially stating at the Rule 30 hearing that he would not, unfairly prevented Gaskin's counsel from arguing against an aiding and abetting *theory* to the jury. *See Smith,* 629 F.2d at 653; *Loveless v. United States,* 260 F.2d 487, 487–88 (D.C. Cir.1958) (per curiam).

The government contends that there was no prejudice because Gaskin's counsel argued against an aiding and abetting theory during closing argument. We have read the transcript of her argument and disagree. Gaskin's counsel did not address the question whether providing a location for the laboratory, without more, would constitute aiding and abetting the manufacture of methamphetamine. Instead, her argument focused on the question whether her client had directly participated in the manufacturing process. Moreover, she did not argue the facts as they would relate to the principle that "mere presence" at the scene of a crime and knowledge that a crime is being committed is not sufficient to establish that an accused aided and abetted, unless the prosecution proves beyond a reasonable doubt that the defendant was a participant, and not merely a knowing spectator. In addition, she could have argued that merely because the drugs were found in Gaskin's house does not mean that he possessed them or possessed them with the intent to distribute them and also does not necessarily mean that he aided Sanders'

possession of the drugs. As in *Harvill,* "we cannot conclude that 'the effectiveness of counsel's argument and hence of appellant's defense' was not impaired by counsel's inaccurate information regarding the court's charge." 501 F.2d at 297, *quoting Wright v. United States,* 339 F.2d 578, 580 (9th Cir.1964). We hold, therefore, that instructing the jury that it could convict Gaskin as an aider or abettor without allowing additional argument to address this theory requires reversal of both counts.—

### III

In light of our conclusion that the Rule 30 violation requires reversal of both counts, we need not address the merits of Gaskin's argument that the district court violated Gaskin's sixth amendment right to a unanimous verdict when it accepted the verdict on count two with the qualifying note. Nor do we express an opinion on the merits of the government's contention that polling the jury removed all doubt as to the unanimity of the jury's verdict on count two. Finally, we do not reach the question whether a special unanimity instruction was required in this case.

The judgment on both counts is reversed and the case is remanded for a new trial.

**REVERSED.**