UNITED STATES of America,
Plaintiff–Appellee,

v.

Joseph Christopher FONTENOT,
Defendant–Appellant.

No. 91–10593.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 15, 1993.

Decided Jan. 20, 1994.

§ 107 is constitutional is, *a fortiori,* a conclusion that the attached rider is constitutional.

Amitai Schwartz, San Francisco, California, for the defendant-appellant.

Stephen L. Meagher, Assistant United States Attorney, San Francisco, California, for the plaintiff-appellee.

Before: HUG, and LEAVY, Circuit Judges, and REAL,* District Judge.

LEAVY, Circuit Judge:

Joseph Christopher Fontenot (Fontenot) appeals from his conviction and sentence for traveling in interstate commerce with intent

---

* The Honorable Manuel L. Real, Chief United States District Judge for the Central District of California, sitting by designation.

to hire a person to murder his wife, in violation of 18 U.S.C. § 1958.[1] We affirm.

## FACTS

While vacationing in San Francisco with his girlfriend, Suzanna Walton (Walton), during the week of June 7, 1990, Fontenot hired a limousine driver, Marcelo Feldberg (Feldberg). Fontenot told Feldberg that he wished there was some way he could "get rid of" his wife, Catherine, because he feared she would obtain custody of their children. Later, when Fontenot made it clear that he was looking for help in eliminating his wife, Feldberg told Fontenot that he might know of a hit man who would do the job for $3,000–5,000. The men exchanged telephone numbers and agreed to keep in touch.

Feldberg made several telephone calls to Fontenot. During one conversation, Fontenot inquired whether Feldberg had found a hit man. Feldberg stated he had yet to do so because he wanted to make sure Fontenot was serious. To show his intention, Fontenot wired Feldberg $1,000 as a down payment on June 18, 1990. Unknown to Fontenot, Feldberg was working as a confidential informant (CI) for the Immigration and Naturalization Service (INS). Feldberg telephoned INS Agent John Fox (Fox) to report Fontenot's proposition.

Agent Fox contacted the FBI. The FBI had Agent William Reagan (Reagan) pose as the hit man. Reagan telephoned Fontenot. The men agreed that, in exchange for killing Catherine, Fontenot would pay $2,500 to Reagan to cover initial expenses and, after receiving the proceeds of a $100,000 life insurance policy recently taken out on Catherine's life, Fontenot would pay an additional $10,000 to Reagan.

Fontenot traveled from Texas to San Francisco where the two men met. During this meeting, Fontenot provided Reagan with Catherine's physical description, as well as a description of her life-style, personal habits and health problems. At the end of the meeting, Fontenot was arrested.

## DISCUSSION

### I. Entrapment

Fontenot claimed he was entrapped in that Feldberg induced him into planning the crime and hiring Reagan. The jury was given the following instruction:

> A person is entrapped when the person has no previous intention to violate the law and is persuaded to commit a crime by government agents.

> On the other hand, where a person is already willing to commit a crime, it is not entrapment if government agents merely provide an opportunity to commit the crime.

Shortly after beginning deliberations, the jury sent the court a note, which read:

> For the purposes of considering the issue of entrapment, was Marcelo Feldberg a government agent? If he was a government agent, when did he become a government agent?

In response, the court gave the following instruction:

> Whether or not Mr. Feldberg was a government agent, and if so when he became a government agent are questions for you to decide. In deciding those questions you should consider that, for purposes of entrapment, someone is a government "agent" when the government directs and supervises his or her activities and is aware of those activities. To be an agent, it is not enough that someone has previously acted as an informant or been paid as an informant by other state or federal agencies or that one expect compensation for providing information.

> You must look to all of the circumstances existing at the time, and including

---

1. 18 U.S.C. § 1958 provides in relevant part:
   Whoever travels in or causes another (including the intended victim) to travel in interstate or foreign commerce, or uses or causes another (including the intended victim) to use the mail or any facility in interstate or foreign commerce, with the intent that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value, shall be fined not more than $10,000 or imprisoned for not more than ten years, or both....

but not limited to the nature of the informant's relationship with the government, the purposes for which it was understood that he may act on behalf of the government, the instructions given to the informant about the nature and extent of permissible activities and what the government knew about those activities and permitted or used.

Those are matters for your consideration. That's not an exhaustive list, but those are the kinds of things that you may consider in deciding whether he was a government agent.

Fontenot argues the instruction given in response to the jury's question was error in several ways.

### A. *Federal Rule of Criminal Procedure 30*

Fontenot argues the district court violated Federal Rule of Criminal Procedure 30 by failing to notify him that it would give the jury the supplemental instruction on agency, and thus unfairly prevented him from arguing this aspect of the evidence.

Rule 30 provides:

At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests.... The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury.

Fontenot relies on *United States v. Gaskins*, 849 F.2d 454 (9th Cir.1988) where we found a prejudicial violation of Rule 30 and reversed. However, *Gaskins* is distinguishable. There, the district court responded to a jury's question by giving an instruction on aiding and abetting that the government had requested and the court had rejected before argument, as Rule 30 requires. Defense counsel's request for leave to reopen closing argument was denied. Here, neither party requested an instruction on agency, or moved to reopen closing argument.

■ By its terms, Rule 30 applies to instructions requested by a party prior to the close of evidence. *United States v. Buishas*, 791 F.2d 1310, 1316 (7th Cir.1986); *United*

*States v. Newson*, 531 F.2d 979, 983 (10th Cir.1976); *United States v. Clarke*, 468 F.2d 890, 891–92 (5th Cir.1972). Neither Fontenot nor the government requested the instruction. Thus the court had no duty or opportunity to inform counsel of its proposed action on the question from the jury. We hold that Rule 30 does not apply in the absence of a requested instruction which the court initially declined to give.

■ However, if a supplemental jury instruction given in response to a jury's question introduces a new theory to the case, the parties should be given an opportunity to argue the new theory. *See United States v. Horton*, 921 F.2d 540, 546–48 (4th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2860, 115 L.Ed.2d 1027 (1991); *United States v. Civelli*, 883 F.2d 191, 196 (2d Cir.), *cert. denied*, 493 U.S. 966, 110 S.Ct. 409, 107 L.Ed.2d 374 (1989); *United States v. Cheek*, 882 F.2d 1263, 1279 (7th Cir.1989), *vacated on other grounds*, 498 U.S. 192, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991). This result is not dictated by Rule 30, but rather it is required to prevent unfair prejudice.

■ A supplemental instruction which merely clarifies an existing theory does not mandate additional arguments. *See Horton*, 921 F.2d at 547 (the purpose of Rule 30 would be frustrated if supplemental instructions which present a new theory were given without an opportunity for additional argument); *Civelli*, 883 F.2d at 196 ("there are special cases where the principles that underlay Rule 30 may very well require that the district court allow further argument after an instruction has been given."); *United States v. Smith*, 789 F.2d 196, 202 (3d Cir.), *cert. denied*, 479 U.S. 1017, 107 S.Ct. 668, 93 L.Ed.2d 720 (1986) (supplemental instructions which materially modify the original instructions could violate Rule 30). Here, the instruction on agency merely clarified Fontenot's entrapment theory.

Fontenot contends that his counsel should have been permitted to make further argument to the jury after its question was answered. However, no request for leave to reopen argument was made. We have no ruling to review.

## B.  Submission of Agency Issue to the Jury

██  A finding of entrapment depended upon a finding that Feldberg was a government agent, because one cannot be entrapped by a private citizen.  *United States v. Cruz*, 783 F.2d 1470, 1473 (9th Cir.), *cert. denied*, 476 U.S. 1174, 106 S.Ct. 2902, 90 L.Ed.2d 987 (1986).  Fontenot argues the district court erred in submitting the agency issue to the jury because Feldberg was a government agent as a matter of law.

He argues that the government waived its claim that Feldberg was not a government agent by tacitly admitting Feldberg was an agent when he first encountered Fontenot and by failing to claim that he was not one. Fontenot relies upon the First Circuit's decision in *United States v. Annese*, 631 F.2d 1041 (1st Cir.1980).  In *Annese*, the First Circuit found that "the evidence established [that the person who may have entrapped the defendant, was a government agent] beyond a reasonable doubt."  *Id.* at 1048.  The district court's instruction on agency thus "created a question of fact that did not exist." *Id.* at 1048.  However, here the evidence supported a legitimate question of fact as to whether Feldberg was an agent of the FBI during his first contacts with Fontenot.

██  Fontenot also argues that under *Sherman v. United States*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), Feldberg was an agent as a matter of law.  However, the issue of entrapment is fact-specific.  *See United States v. Mkhsian*, 5 F.3d 1306, 1309 (9th Cir.1993); *United States v. Stenberg*, 803 F.2d 422, 431 (9th Cir.1986).  To have found that Fontenot was entrapped, the jury would have had to find that Feldberg was a government agent during the first few interactions between Feldberg and Fontenot. Whether Feldberg was a government agent was not clear.

██  This was not a case in which the evidence proved beyond a reasonable doubt that the informant was or was not a government agent.  *See Sherman*, 356 U.S. at 374 n. 2, n. 3, 78 S.Ct. at 821–22 no. 2, n. 3 (the informant testified that it was his job, pursuant to his promise to cooperate with the government, to try to find people to sell him

narcotics);  *United States v. Busby*, 780 F.2d 804, 806 (9th Cir.1986) (no question that informant was not a government agent as a matter of law where the government was "wholly unaware of [the informant's] activities" and had no agreement with the informant).  The facts in this case do not lead to such a definite conclusion.  "An informant is not necessarily a government agent."  *Cruz*, 783 F.2d at 1473.  Feldberg was not a government agent as a matter of law.  This issue of fact was properly submitted to the jury.

## C.  The Supplemental Jury Instructions Correctly State the Law of Agency

Fontenot argues the district court's supplemental instruction misstates the substantive law of agency.  Fontenot cites *Sherman*, claiming that case requires that we find the instructions that were based on *Busby* improper in this case.  However, as noted above, the question of agency is fact-specific. Neither *Sherman* nor *Busby* dictate a certain result under other circumstances.

██  The district court correctly instructed the jury that "someone is a government 'agent' when the government directs and supervises his or her activities and is aware of those activities."  In addition, the kinds of factors the court told the jury to evaluate to determine whether Feldberg was a government agent—"the nature of his relationship with the government, the purposes for which it was understood that he may act on behalf of the government, the instructions given him about the nature and extent of permissible activities, and what the government knew about those activities and permitted or used"—were proper for this factual determination.  The district court's supplemental agency instruction correctly stated the substantive law of agency.

We find no error in the supplemental jury instruction and affirm.

## II.  Peremptory Challenge Conference

Fontenot argues his conviction must be reversed because he was absent from the peremptory challenge conference, though he was present for the jury voir dire.  He con-

tends his absence violated his right to be present during trial in violation of Federal Rule of Criminal Procedure 43(a) and the Fifth and Sixth Amendments to the United States Constitution. Rule 43(a) provides that a defendant must be present "at every stage of the trial including the impaneling of the jury."

Fontenot raised this issue for the first time nearly seven months after the verdict. The district court noted that the issue was known to the defendant and his attorney from the beginning and denied the motion as untimely. Fontenot concedes that it was within the district court's discretion to do so, but argues that his absence from the peremptory challenge conference requires reversal because it was plain error. "'A plain error is a highly prejudicial error affecting substantial rights.'" *United States v. Dischner,* 960 F.2d 870, 883 (9th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1290, 122 L.Ed.2d 682 (1993) (quoting *United States v. Giese,* 597 F.2d 1170, 1199 (9th Cir.), *cert. denied,* 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979)).

■ The government argues Fontenot waived any claim regarding his absence from the peremptory challenge conference because he failed to object to that absence. *See* Fed.R.Crim.P. 43(b); *United States v. Gagnon,* 470 U.S. 522, 527–28, 105 S.Ct. 1482, 1484–85, 84 L.Ed.2d 486 (1985) (per curiam) ("The district court need not get an express 'on the record' waiver from the defendant for every trial conference which a defendant may have a right to attend.... A defendant knowing of such a [conference] must assert whatever right he may have under Rule 43 to be present."). Rule 43(b) provides that a defendant waives his right to be present during a stage of the trial when he, "initially present, ... is voluntarily absent after the trial has commenced." In this case, the record does not show whether Fontenot was voluntarily or involuntarily absent from the peremptory challenge conference. We reject the government's waiver argument.

■ We need not determine whether the peremptory challenge conference is a "stage of the trial" or comes within the terms "impaneling the jury" under Rule 43(a).[2] Assuming, without deciding, that the peremptory challenge conference falls within Rule 43(a)'s proscriptions, we nonetheless reject Fontenot's argument of plain error.

Fontenot argues that his absence led to the presence of a possibly biased juror, whose close friend was murdered by her former husband, and he was denied his opportunity to assist counsel in the final selection of jurors.

After all challenges for cause were made, the parties were given time during a recess to discuss how to use their peremptory challenges. *See* Excerpt of Record 287–91. Fontenot had the opportunity to discuss his misgivings with counsel during and immediately following voir dire, prior to exercising his peremptory challenges. Peremptory challenges were then apparently exercised in the jury room in the absence of Fontenot. No objection was made. Fontenot had an opportunity to participate at the impaneling of the jury to such an extent that we find no error that was "highly prejudicial ... affecting substantial rights." *See Dischner,* 960 F.2d at 883.

### III. Exculpatory Evidence

Fontenot sought to introduce Walton's testimony that, on June 17, 1990, shortly after a telephone conversation between Feldberg and Fontenot, Fontenot told Walton, "They are going to kill Cathy." Additionally, Walton would have testified that, on June 21, 1990, Fontenot told her "something to the effect that he had to go to San Francisco, and that his life was in danger by going, but that his life was in even more danger if he didn't go." The district court excluded these statements as inadmissible hearsay under Federal Rule of Evidence 801. We conclude the district court did not err in doing so.

---

**2.** We have not yet decided this issue. The Eleventh Circuit has held that a defendant's right to be present and represented by counsel at every stage of the proceedings against him extends to that phase of the jury selection process involving the exercise of peremptory strikes. *See United States v. Bascaro,* 742 F.2d 1335, 1349 (11th Cir.1984), *cert. denied,* 472 U.S. 1017 & 1021, 105 S.Ct. 3477 & 3488, 87 L.Ed.2d 613, 622 (1985).

Rulings on the admissibility of evidence are reviewed for abuse of discretion. *United States v. Catabran,* 836 F.2d 453, 456 (9th Cir.1988). Evidentiary errors do not require reversal unless they more probably than not tainted the verdict. *United States v. Lee,* 846 F.2d 531, 536 (9th Cir.1988).

Fontenot first contends the statements were not inadmissible hearsay under Federal Rule of Evidence 801(c) because they were not offered to prove the truth of the matter asserted. The government concedes that, had Fontenot testified, the statements would be admissible (after cross-examination) as prior consistent statements. However, "[w]ithout Fontenot's testimony, they were out of court statements of his belief offered for their truth and designed to permit those beliefs to be established without subjecting Fontenot to cross-examination." We agree.

Fontenot contends that the statements should have been admitted under two exceptions to the hearsay rule: (1) as an excited utterance, Federal Rule of Evidence 803(2);[3] or (2) as evidence of his then existing mental or emotional condition, Federal Rule of Evidence 803(3).[4] We reject both arguments. While one of the statements occurred after a telephone call that Fontenot's counsel states was "apparently extraordinarily terrifying," the other occurred four days later. This second statement was not an excited utterance. Even if the first statement were an excited utterance, we cannot say that its exclusion "more likely than not affected the verdict." *See United States v. Faust,* 850 F.2d 575, 585 (9th Cir.1988).

The statements likewise do not fall within Federal Rule of Evidence 803(3) as they contain statements of belief, not condition. As we stated in *United States v. Emmert,* 829 F.2d 805 (9th Cir.1987):

"The state-of-mind exception does not permit the witness to relate any of the declarant's statements as to why he held the particular state of mind, or what he might have believed that would have induced the state of mind. If the reservation in the text of the rule is to have any effect, it must be understood to narrowly limit those admissible statements to declarations of condition—'I'm scared'—and not belief—'I'm scared because [someone] threatened me.'"

*Id.* at 810 (quoting *United States v. Cohen,* 631 F.2d 1223, 1225 (5th Cir.1980) (emphasis omitted)). Fontenot stated in his opening brief that, "the statements would have demonstrated that *[Fontenot]* *believed* his and Cathy Fontenot's lives were in danger" (emphasis added). These statements cannot be admitted under the state-of-mind exception to the hearsay rule. The district court did not err in excluding either statement.

## IV. Sentencing Issues

Fontenot was sentenced to 108 months in prison under the terms of the sentencing guidelines in effect between November 1989 and November 1990. The base offense level for use of interstate facilities with intent to commit murder for hire was 23, with a guideline range of 57 to 77 months under criminal history category III. U.S.S.G. § 2E1.4 (1989). The district court justified the sentence alternatively on adjustments of the base level and departures from the guideline range.

### A. *The Adjustments of the Base Level*

Adjustments of the base level, unlike departures from the sentencing range, are not discretionary. Thus, where the district court gives alternative grounds for a base level adjustment, its sentence can be affirmed as long as one of the alternatives properly supports the adjustment, without regard to whether the other ground is prop-

---

3. Federal Rule of Evidence 803(2) excepts from the hearsay rule

   [a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

4. Federal Rule of Evidence 803(3) excepts from the hearsay rule

   [a] statement of the declarant's then existing state of mind, emotion, ... (such as intent, plan, motive ...) ... but not including a statement of memory or belief to prove the fact remembered or believed....

er. *See, e.g., United States v. Hernandez–Valenzuela,* 932 F.2d 803 (9th Cir.1991).

### 1. The First Adjustment

The district court increased Fontenot's base offense level by two levels for his refusal to submit to or cooperate in a court ordered psychiatric examination. U.S.S.G. § 3C1.1 (1989) provides:

> If the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase the offense level by 2 levels.

Fontenot contends that an adjustment under U.S.S.G. § 3C1.1 is appropriate only where the evidence sought to be concealed or destroyed was material. He argues the benefit to the prosecution of the psychiatric testing here was, at best, wholly speculative and most likely of no value at all. Because the information would not have assisted in his prosecution, Fontenot concludes, he did not impede his prosecution. *See United States v. Reyes,* 908 F.2d 281, 290 (8th Cir.1990) (where a defendant "refuses to comply with a court order ... thereby concealing or attempting to conceal *material evidence,*" an enhancement is appropriate), *cert. denied,* 499 U.S. 908, 111 S.Ct. 1111, 113 L.Ed.2d 220 (1991).

■ The psychiatric testing which Fontenot refused was necessary for the prosecution to respond properly to his defense of diminished capacity. Fontenot claimed his diminished capacity was due to five brain surgeries which led to mental impairments that negated the specific intent necessary for a conviction. The psychiatric evaluation was material. The district court did not err in imposing a two-level increase under U.S.S.G. § 3C1.1. Fontenot's base offense level at this point is 25. His 108–month sentence exceeds the range set for that level. Thus, we evaluate the remaining justifications the district court cited for the sentence.

### 2. The Second Adjustment of the Base Level

The district court made a second adjustment of two levels based alternatively on Fontenot's abusing a position of trust (U.S.S.G. § 3B1.3) or selecting a vulnerable victim (U.S.S.G. § 3A1.1).

### a. Abuse of a Position of Trust

First, the district court relied on U.S.S.G. § 3B1.3 (1989) to justify the second two-level adjustment. That section provides:

> If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels.

The presentence report concluded that an adjustment under section 3B1.3 was inappropriate because this section was generally applied in fiduciary matters and the United States Sentencing Commission's Position is that it would be "too widespread to apply to a husband and wife relationship." The district court disagreed. It found that a position of trust is inherent in the marital relationship. An adjustment was warranted, the district court concluded, because Fontenot used the information gained from his years of marriage with Catherine to advise Reagan, the FBI agent posing as a hit man, of personal aspects of Catherine's life that could be exploited to facilitate the offense. The district court also noted that Fontenot used his position of trust to persuade Catherine to sign papers related to the insurance policy from which he would benefit on her death.

■ Fontenot contends the district court's adjustment under section 3B1.3 was improper because that section does not apply to spousal relationships. We need not decide this issue. We find the district court erred in its two-level adjustment under section 3B1.3 because, assuming Fontenot occupied a "position of ... private trust", he did not abuse that position "in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. The statute under which Fontenot was convicted, 18 U.S.C. § 1958, requires only that the defendant travel in interstate commerce with intent that a murder for hire be committed. Fontenot's position of trust via the marital relationship with Catherine did not "facilitate" his travel, or the formation of his intent, or the concealment of this offense. Thus, the district court erred in making a two-level adjustment under section 3B1.3.

### b. *Vulnerable Victim*

██ Fontenot contends that the district court's alternative reasoning to support the second adjustment under U.S.S.G. § 3A1.1 was erroneous. U.S.S.G. § 3A1.1 (1989) provides:

> If the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct, increase by 2 levels.

Fontenot argues that his intended victim was no more vulnerable than any other intended victim of a murder for hire. We agree. Any person contracting for a murder for hire is likely to know the intended victim well. The information Fontenot shared with Reagan about his wife did not make her particularly susceptible to the criminal conduct. Nor did Fontenot's convincing his wife to let him take out an insurance policy on her indicate she was particularly vulnerable to a murder for hire. The district court erred in relying on U.S.S.G. § 3A1.1 to support the second two-level adjustment.

Because we hold that the second adjustment was in error and the sentence imposed exceeds the range for an offense level of 25, criminal category III, we must determine whether the district court's grounds for an upward departure support the sentence.

### B. *The Departures from the Sentencing Range*

The district court gave two alternative reasons for an upward departure: (1) a pecuniary interest, or (2) more than minimal planning. "[W]hile departure decisions are properly reviewed under [U.S.C.] § 3742(f)(2), they are *also* properly reviewed under [U.S.C.] § 3742(f)(1) when they are the result of an incorrect application of the guidelines . . . that govern departure decisions." *Williams v. United States,* — U.S. —, —, 112 S.Ct. 1112, 1120, 117 L.Ed.2d 341 (1992) (emphasis in original).

██ In determining whether to remand a sentencing decision we must apply a two-part test: (1) "was the sentence imposed either in violation of law or as a result of an incorrect application of the Guidelines? If so, a remand is required under . [U.S.C.] § 3742(f)(1)." *Id.* If not, we must ask (2) "is the resulting sentence an unreasonably high or low departure from the relevant guideline range? If so, a remand is required under [U.S.C.] § 3742(f)(2)." *Id., see also United States v. Henderson,* 993 F.2d 187, 188 (9th Cir.1993).

"The [Sentencing Reform Act of 1984 as amended] provides that a district court may depart from the sentencing range set by the Guidelines only when it finds that 'there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines.'" *Williams,* — U.S. at —, 112 S.Ct. at 1118 (quoting 18 U.S.C. § 3553(b)); *see also,* U.S.S.G. § 5K2.0 (1989); *United States v. Lira–Barraza,* 941 F.2d 745, 746 (9th Cir.1991) (en banc). One justification the district court gave for departing was that Fontenot had a profit motive.

██ Fontenot argues that the sentencing guidelines take a profit motive into consideration in a murder for hire. This is true as applied to the person hired to commit the murder. Fontenot was not hired to kill his wife. Rather, he hired Reagan to kill Catherine. In a typical murder for hire, Reagan, the hit man, would have the profit motive, which the sentencing guidelines adequately take into account. Here, Fontenot, the hirer, also had a profit motive because he would receive the proceeds of a life insurance policy he had taken out on Catherine. Fontenot's profit motive was not adequately taken into consideration by the sentencing guidelines. Thus, his profit motive is a proper ground for this upward departure.

██ The district court alternatively based the departure from the sentencing guideline range on more than minimal planning. Fontenot arranged for life insurance on Catherine. He used the facilities of interstate commerce with intent that a murder for hire be committed, in his first telephone conversation with Reagan. During that conversation, Fontenot and Reagan discussed the price of the service, how much Reagan would need up front, and that Catherine's murder should look like an accident. After that, Fontenot traveled to California, met with Reagan in person, provided Reagan with de-

tailed information on the intended victim, and made specific requests on how the killing should occur and how the body should appear. All of this took more than minimal planning.

Because we hold that the departure was not imposed in violation of the law or as a result of a misapplication of the sentencing guidelines, we must next decide whether the departure was reasonable under U.S.C. § 3742(f)(2). *Williams,* —— U.S. at ——, 112 S.Ct. at 1120. In making this decision, we "examine the factors to be considered in imposing a sentence under the Guidelines, as well as the district court's stated reasons for the imposition of the particular sentence." *Id.* —— U.S. at ——, 112 S.Ct. at 1121. *See also Lira–Barraza,* 941 F.2d at 747, 751. We hold that the amount and extent of this departure was reasonable based either on Fontenot's profit motive or on his more than minimal planning.

## CONCLUSION

Fontenot's conviction and sentence are AFFIRMED.