N.R. SMITH, Circuit Judge,
dissenting:
They say “the third time’s the charm.” Not so in what is now the fourth revision of this opinion, wherein the majority still fails to correct all of its errors. As a result of these errors, contrary to the Federal Rules of Evidence, non-contemporaneous hearsay testimony used to prove a declarant’s memories, beliefs, and the cause of an underlying state of mind is now admissible. Making matters worse, the majority allows such testimony absent a foundation of personal knowledge. In its opinion, the majority reverses the district court on issues that have been waived and are not properly before the panel, fails to correctly construe the hearsay rule and fails to give the proper deference to the district court’s other evidentiary rulings. I must therefore dissent because:
1. Assuming (but not deciding) that a de novo standard of review applies when determining whether a statement is hearsay, the majority fails to properly construe the hearsay rule. Under the hearsay rule, statements asserting a declarant’s beliefs are hearsay, if offered to prove the declar-ant’s belief or offered for a purpose that requires the declarant to believe the matters asserted are true. Therefore, the district court did not err in concluding that Yvon Wagner’s testimony was hearsay.
2. The majority fails to apply the “substantially deferential” abuse of discretion test, recently elucidated by our en banc panel in United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir.2009) (en banc), for the remaining evidentiary issues appealed here. Though an appellate jurist may have ruled differently on these issues, “we may not simply substitute our view for that of the district court, but rather must give the district court’s findings deference.” Id.
I.
STANDARD OF REVIEW
This circuit’s case law is not entirely clear regarding whether we review de novo a district court’s decision that a statement is or is not hearsay. Compare United States v. Stinson, 647 F.3d 1196, 1210 (9th Cir.2011) (“We review a district court’s evidentiary rulings for abuse of discretion.”), and United States v. Tran, 568 F.3d 1156, 1162 (9th Cir.2009) (applying an abuse of discretion standard in determining whether a statement is hearsay under Rule 801), with Mahone v. Lehman, 347 F.3d 1170, 1173-74 (9th Cir.2003) (‘We review the district court’s construction of the hearsay rule de novo.... ” (quoting Orr v. Bank of Am., NT & SA, 285 F.3d 764, 778 (9th Cir.2002))), United States v. Collicott, 92 F.3d 973, 978-82 (9th Cir.1996) (holding that the district court erred, because the statements at issue were hearsay and not admissible under Rule 801(d)(1)(B), never mentioning whether the district court abused its discretion, but rather seems to have reviewed the hearsay determination de novo), and United States v. Warren, 25 F.3d 890, 894-95 (9th Cir. *1055 1994) (held that the statements at issue were admissible under Rule 801(d)(2)(A) because they were not hearsay, with no mention of an abuse of discretion).
The Second Circuit and Sixth Circuit have held that a district court’s determination whether a statement is hearsay is reviewed de novo. United States. v. Ferguson, 653 F.3d 61, 86 (2d Cir.2011); Biegas v. Quickway Carriers, Inc., 573 F.3d 365, 378-81 (6th Cir.2009). But see Trepel v. Roadway Exp., Inc., 194 F.3d 708, 716-17 (6th Cir.1999) (“Therefore, in disregard of our heretofore well-settled precedent that hearsay evidentiary rulings are reviewed de novo, we shall review the district court’s ruling for an abuse of discretion.” (citation omitted)).
We review the district court’s remaining evidentiary rulings for abuse of discretion. Gen. Elec. Co. v. Joiner, 522 U.S. 136, 141, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). We do not reverse evidentiary rulings unless the rulings are “manifestly erroneous and prejudicial.” Orr, 285 F.3d at 773. “This includes the exclusion of evidence under a hearsay rule.” Stinson, 647 F.3d at 1210. We also review the district court’s handling of closing arguments for an abuse of discretion. United States v. Lazarenko, 564 F.3d 1026, 1043 (9th Cir.2009).
Our circuit employs a “significantly deferential” two-step test to determine whether a district court abused its discretion. Hinkson, 585 F.3d at 1262. The first step “is to determine de novo whether the trial court identified the correct legal rule to apply to the relief requested.” Id. If so, the second step “is to determine whether the trial court’s application of the correct legal standard was (1) ‘illogical,’ (2) ‘implausible,’ or (3) without ‘support in inferences that may be drawn from the facts in the record.’ ” Id. (quoting Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 577, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)). “If any of these three apply, only then are we able to have a ‘definite and firm conviction’ that the district court reached a conclusion that was a ‘mistake’ or was not among its ‘permissible’ options, and thus that it abused its discretion by making a clearly erroneous finding of fact.” Id. In other words, “we do not automatically reverse a district court’s factual finding if we decide a ‘mistake has been committed.’ ” Id. at 1263.
II.
WAGNER’S TESTIMONY
The majority first concludes that the district court erred by excluding testimony from Vogel’s sister, Yvon Wagner, regarding statements made by Vogel (who was deceased before trial).[1] Wagner would have testified regarding Vogel’s thoughts and beliefs during the dress-out procedure based on statements Vogel purportedly made — after the fact — to Wagner. The majority finds that the district court erred, apparently as a matter of law, no matter whether the standard of review is de novo or abuse of discretion. The majority erroneously concludes that Wagner’s testimony was not offered to prove what Vogel asserted.
A. Wagner’s testimony was hearsay evidence
The Estate argues that Wagner’s testimony was not hearsay, because it was not *1056 offered to prove the details of the dress-out procedure (i.e., that Vogel was actually-raped). Instead, the Estate argues that Wagner’s testimony was offered to show Vogel’s state of mind following the dress-out procedure and the lasting impact the event had on Vogel following his release. The majority asserts that Wagner “was not asserting the truth of anything that Vogel said had happened to him in jail.” Maj. Op at 1052. I disagree with both. Wagner’s testimony was offered to prove the truth of the matter asserted — i.e., that Vogel believed the events he described happened. The district court did not incorrectly construe or apply the hearsay rule.
Hearsay “is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” Fed.R.Evid. 801(c). The majority agrees that, if Wagner’s testimony — including Vo-gel’s statements that (1) he was forcibly undressed by detention officers, (2) he was dressed in pink underwear and slippers, (3) the officers “manhandled” him on the floor of his jail cell, and (4) he called out to other inmates for help — were offered for the truth of the matter asserted, it would be hearsay. Even if this information were consistent with other evidence in this case, it could not be proven by Wagner using hearsay evidence.
However, the Estate and the majority assert that Wagner’s testimony is not offered to prove the “truth of anything that Vogel said had happened to him in jail.” Maj. Op. at 1052. That assertion may be true, but it is not focused on Wagner’s statements. For example, Wagner testified that Vogel (1) “felt he was being raped,” (2) “felt one of the officers attempted to put his penis in his mouth,” (3) “believed he was being raped,” and (4) “believed the pink underwear was used to put him in [a] vulnerable position with these officers.” Wagner’s testimony is offered to prove the truth of what Vogel asserted — i.e., that he believed what he described occurred. A statement is hearsay if offered to prove the truth of the matter asserted. Focusing on Wagner’s statements, they are hearsay, because they were offered to show that Vogel actually believed the facts asserted. 30B Michael H. Graham, Federal Practice & Procedure § 7044 (interim ed. 2000) (explaining that second-hand statements of belief are hearsay, but may be admissible under Rule 803(3)’s exception to the hearsay rule). Further, the statements are hearsay, because it must be proven that Vogel believed the matters asserted were true for the Estate’s mental state argument to succeed. Id. § 7006 (“If the declarant must believe the matter asserted to be true for any inference to logically flow, ... the hearsay risks of sincerity and narration are present. Such statements are thus properly classified as hearsay.”). The Estate never made an offer of proof to demonstrate that the proffered testimony complied with the hearsay rule. Therefore, the district court’s determination (that Wagner’s testimony was hearsay) was not erroneous and the district court did not misconstrue the hearsay rule.
B. Wagner’s testimony did not fall under Rule 803(3)’s then-existing state of mind exception to the hearsay rule
The Estate argues that, even if Wagner’s testimony were hearsay, it was admissible as evidence under the state of mind exception in Federal Rule of Evidence 803(3). The majority agrees. However, the district court disagreed and, because this is a discretionary decision, we must afford the district court’s decision substantial deference. Here, the district court’s determination that Wagner’s testimony regarding Vogel’s post-release state- *1057 merits did not fall under Rule 803(3)’s state of mind exception was not illogical, implausible, or without support in inferences that may be drawn from the facts in the record. The statements (1) were statements of memory or belief made at least one week after the events at issue; and (2) were offered not simply to demonstrate Vogel’s present mental condition but his past mental condition (i.e., that he was agitated), and also to explain why he was agitated (i.e., that he believed he was being raped). Therefore, although we may have decided this issue differently, the district court did not abuse its discretion.
Rule 803(3) creates an exception to the hearsay rule for “[a] statement of the de-clarant’s then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or be-lieved_” Fed.R.Evid. 803(3) (2010) (emphasis added). Vogel’s statements do not meet Rule 803(3)’s foundational requirements of “contemporaneousness, [lack of] chance for reflection, and relevance.” United States v. Ponticelli, 622 F.2d 985, 991 (9th Cir.1980), overruled on other grounds by United States v. De Bright, 730 F.2d 1255, 1259 (9th Cir.1984) (en banc). Vogel explained the dress out procedure to his family following his release from jail, which was at least seven days after the procedure took place. These were “statements] of memory,” which are expressly prohibited under Rule 803(3). The Rules of Evidence exclude statements of memory, because “[t]he more time that elapses between the declaration and the period about which the declarant is commenting, the less reliable is his statement. ... The state of mind declaration also has probative value, because the de-clarant presumably has no chance for reflection and therefore for misrepresentation.” Ponticelli, 622 F.2d at 991. Vogel conceivably could have misrepresented what happened at the jail (or what he believed happened) to explain or justify his unruly conduct with the officers. Thus, although detention officers’ testimony about what Vogel said during the dress-out procedure is admissible (given its contemporaneity), Vogel’s statements a week or two after the fact do not provide the same probative value contemplated by the exception in Rule 803(3). See United States v. Miller, 874 F.2d 1255, 1265 (9th Cir.1989) (holding that hearsay statements made less than 24 hours after an event did not meet the contemporaneity and lack of reflection requirements under Rule 803(3)).
Additionally, Wagner’s statements were offered to show not only that Vogel was agitated during the dress-out procedure, but also why he was agitated. Such use of Wagner’s statements is not permitted under Rule 803(3), as interpreted by our circuit. We stated in United States v. Emmert that “the state-of-mind exception does not permit the witness to relate any of the declarant’s statements as to why he held the particular state of mind, or what he might have believed that would have induced the state of mind.” 829 F.2d 805, 810 (9th Cir.1987) (emphasis added) (quoting United States v. Cohen, 631 F.2d 1223, 1225 (5th Cir.1980)); see also id. (“[Rule 803(3) ] ... narrowly limit[s] admissible statements to declarations of condition— ‘I’m scared’ — and not belief — 'I’m scared because [someone] threatened me.’ ” (emphasis altered) (internal quotation marks omitted)). We reaffirmed the validity of Emmert in United States v. Fontenot by holding that hearsay statements did not fall under the exception in Rule 803(3), because the statements related why the declarant held the particular state of mind. United States v. Fontenot, 14 F.3d 1364, 1371 (9th Cir.1994). The Fifth Circuit and Tenth Circuit also do not allow statements *1058 that identify why the declarant has the particular state of mind. See, e.g., United States v. Liu, 960 F.2d 449, 452 (5th Cir.1992) (holding that “[e]vidence of ... fear was admitted,” but “[p]roperly excluded were the alleged reasons for that fear” (citing Cohen, 631 F.2d at 1225)); United States v. Ledford, 443 F.3d 702, 709-10 (10th Cir.2005) (“The phrase ‘because the defendant threatened me’ is expressly outside the state-of-mind exception because the explanation for the fear expresses a belief different from the state of mind of being afraid.”).
The majority contends that we made it clear in Emmert that “[t]he bar applies only when the statements are offered to prove the truth of the fact underlying the memory or belief.” Maj. Op. at 1053. However, in Emmert and Fontenot, we did not indicate that our decisions hinged on the declarant offering the reasons for the belief in order to prove the events believed. Rather, our decisions identified the reason for the exclusion to be that the “testimony would have fallen within the ‘belief category and would not have been limited to [the declarant’s] current state of mind.” Emmert, 829 F.2d at 810; see also Fontenot, 14 F.3d at 1371 (noting that “the statements would have demonstrated that [.Fontenot ] believed his and Cathy Fonte-not’s lives were in danger” (alterations in original)).
Here, Wagner intended to testify that Vogel was agitated, because he believed he was being raped and the officers were dressing him in pink underwear for a sex party. This testimony was central to the Estate’s theory of causation that Vogel’s traumatic experience in jail caused his fatal arrhythmia several weeks later. For these reasons, and in light of our case law, the district court’s application of Rule 803(3) to the facts of this case was not illogical, implausible, or •without support in inferences that may be drawn from the facts in the record. The district court did not abuse its discretion.
C. Wagner’s testimony lacked foundation
The majority also determines that the district court abused its discretion in concluding that Wagner lacked personal knowledge about Vogel’s mental condition during the jailhouse dress-out procedure. However, the majority again fails to give any deference to the district court’s decision. Federal Rule of Evidence 602 provides that a “witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness’ own testimony.” (emphasis added). The majority claims Wagner had adequate foundation, because she had personal knowledge of her conversation with Vogel and perceived his emotions. The majority claims Vogel’s statement’s went to establish his state of mind at the time he spoke to his sister. Maj. Op. at 1053. If Wagner’s testimony were only offered to prove Vogel’s temperament during his conversation with Wagner, the majority would be correct.
However, Wagner intended to offer various opinions regarding Vogel’s state of mind while in jail and why he reacted the way he did during the dress-out procedure. For example, Wagner, testified that (1) Vogel “believed he was being raped,” (2) Vogel “believed the pink underwear was used to put him in [a] vulnerable position,” (3) Vogel hid under his bed to protect himself because he was “paranoid” and “felt he was in extreme harm’s way,” and (4) “this was very, I’m sure, frightening for him.” The Estate’s entire theory of liability turns on the purportedly indelible trauma Vogel endured during his stay at the *1059 county jail. Thus, there is no doubt that Wagner offered this testimony to prove what Vogel felt and believed while he was in jail — not how he felt as he described the jailhouse incident a week later. To be sure, the County objected to Wagner’s testimony, not because Wagner failed to establish that she actually had a conversation with Vogel, but because Wagner lacked foundation to testify about the thoughts and beliefs of her floridly psychotic brother during the jailhouse incident. For these reasons, we cannot conclude that the district court abused its discretion in excluding this testimony, in part, because of lack of foundation. Its determination was not illogical, implausible, or without support in inferences that may be drawn from the facts in the record.
III.
EXCLUDING REFERENCES TO PINK UNDERWEAR
The Estate failed to specifically and distinctly argue in its opening brief that the district court erred in excluding evidence related to pink underwear. Therefore, we should consider such an argument waived, and we should not address it. See Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998). While the Estate mentions the issue in its statement of issues and summary of the argument sections of its opening brief, the Estate fails to discuss and argue the point in the body of the arguments section in the opening brief. Such a deficiency waives the issue. See Martinez-Serrano v. I.N.S., 94 F.3d 1256, 1259 (9th Cir.1996) (“[A]n issue referred to in the appellant’s statement of the case but not discussed in the body of the opening brief is deemed waived.”).
IV.
CLOSING ARGUMENT
Lastly, the majority hastily concluded that the district court abused its discretion by denying the Estate a rebuttal closing argument at trial. However, the majority never explains what law gives a plaintiff in the District of Arizona an inalienable right to rebuttal argument, much less how the district court abused its discretion in shaping closing arguments under District of Arizona Local Rule 39.1(d). Rule 39.1(d) guarantees a “right to close” to the party bearing the burden of proof, but that rule has never been defined to provide the right to speak last. The district court permitted the Estate to make a “thorough,” 60-minute closing argument. Following a short recess, the court explained to counsel that “[t]he closing is going to end with [the County]. There isn’t going to be any rebuttal. I just did a little research, it’s discretionary. [The Estate] had a thorough, complete effort at it, and [the County] is entitled to that as well. But we’re not going to have a rebuttal.” The court also noted, “I don’t think there was anything that [the Estate] could have touched on that [the Estate] didn’t explore, several times.”
It is well established that a “trial court has broad discretion in controlling closing arguments.” United States v. Spillone, 879 F.2d 514, 518 (9th Cir.1989); accord Fernandez v. Corporacion Insular De Seguros, 79 F.3d 207, 209-10 (1st Cir.1996) (“The decision to permit rebuttal [in a civil action] is a procedural matter which rests within the sound discretion of the trial judge and rarely (if ever) provides fertile ground for appeal.” (internal citation omitted)). Because the Estate closed with a 60-minute argument pursuant to Rule 39.1(d), the district court did not abuse its “broad” discretion in denying the Estate a rebuttal closing argument.
I would therefore affirm.

. Wagner would have testified that Vogel (1) said the detention officers dressed him in "pink underwear, in pink slippers and, again, at his expense they were accosting him” during the dress-out procedure; (2) believed he had been raped; (3) "felt one of the officers attempted to put his penis in his mouth and that he had to keep his mouth so tight that he bruised his outer lips to avoid being accosted that way,” and (4) believed the officers used the pink underwear to put him in a vulnerable position before a planned sex "party."