IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 106,696

STATE OF KANSAS,
*Appellee*,

v.

JASON LEE BRAMMER,
*Appellant.*

SYLLABUS BY THE COURT

1.

The legislature did not intend to create alternative means of committing involuntary manslaughter while driving under the influence of alcohol or drugs under K.S.A. 21-3442 by providing that the crime occurs when there is a killing of a human being "in the commission of, or attempt to commit, or flight from" driving under the influence. Instead, the phrase "in the commission of, or attempt to commit, or flight from" describes factual circumstances sufficient to establish a material element of the crime.

2.

K.S.A. 22-3414(3) requires a party with a disagreement about proposed jury instructions to make a record "stating distinctly the matter to which the party objects and the grounds of the objection." K.S.A. 22-3414(3) is not satisfied by merely having filed a pretrial request for a different instruction.

1

3.

The failure to comply with K.S.A. 22-3414(3) regarding a jury instruction given or omitted by the district court invokes clear error review on appeal for a subsequent challenge to the giving or omission of that instruction.

Review of the judgment of the Court of Appeals in an unpublished opinion filed May 24, 2013. Appeal from Marshall District Court; JAMES A. PATTON, judge. Opinion filed February 20, 2015. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Corrine E. Gunning*, of the Kansas Appellate Defender Office, argued the cause, and *Randall L. Hodgkinson*, of the same office, was with her on the briefs for appellant.

*Laura E. Johnson-McNish*, county attorney, argued the cause, and *Derek Schmidt*, attorney general, was with her on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: Jason Brammer appeals his conviction for involuntary manslaughter while driving under the influence of alcohol (DUI). See K.S.A. 21-3442. He argues the jury was instructed on alternative means without sufficient evidence as to each means. He also challenges three jury instructions that differed from those Brammer proposed before trial—although Brammer did not object when the trial court failed to adopt his proposed instructions. The Court of Appeals affirmed the conviction. In doing so, the panel held K.S.A. 22-3414(3) requires a trial objection and applied clear error review to the jury instruction challenges. *State v. Brammer*, No. 106,696, 2013 WL 2395296, at *5 (Kan. App. 2013) (unpublished opinion). We granted review and affirm.

2

Brammer's alternative means argument is without merit. K.S.A. 21-3442 states in relevant part: "Involuntary manslaughter while driving under the influence of alcohol or drugs is the unintentional killing of a human being committed *in the commission of, or attempt to commit, or flight*" from DUI. (Emphasis added.) The italicized language is identical to that used in the felony-murder statute, which has been held to describe the factual circumstances sufficient to establish a material element of the crime, not set out alternative means. *State v. Cheffen*, 297 Kan. 689, 700-01, 303 P.3d 1261 (2013). The same rationale applies for the involuntary manslaughter statute.

We further hold that K.S.A. 22-3414(3) requires a party to object on the record to a jury instruction by "stating distinctly the matter to which the party objects and the grounds of the objection." This statutory mandate is not satisfied by merely having filed an earlier pretrial request for a different jury instruction. The failure to comply with K.S.A. 22-3414(3) regarding a jury instruction invokes clear error review in a subsequent challenge on appeal to that instruction. Finally, we reject Brammer's arguments relating to the three jury instructions he contests.

FACTUAL AND PROCEDURAL BACKGROUND

Taylor White died on October 4, 2009, after Brammer's truck collided head-on with White's vehicle on a well-maintained rural rock road. Three hours after the crash, Brammer's blood alcohol concentration was .11, which is .03 higher than the legal limit.

Brammer does not recall the collision. He testified there was thick dust hanging over the roadway and he did not see White's truck so there was no time to take evasive action. He also testified he only recalled drinking a 12-pack of beer the night before the collision but was not hung-over the next morning. He remembers drinking one beer the day of the fatality crash.

3

Hunter Lindeen, the passenger in White's vehicle, testified they first encountered a Jeep Cherokee just as they reached the top of a long hill. White kept driving but pulled off to the side of the road because the Jeep was moving quickly. Lindeen noticed dust after the Jeep passed. It "stayed right with the road. It hadn't moved at all." Three or 4 seconds later, Lindeen saw Brammer's vehicle. When asked what happened next, Lindeen testified "[White] had yelled and I went into a state of shock more or less, and didn't even have time to look at the driver it happened [at] such a fast pace." Lindeen agreed when asked whether Brammer's truck appeared out of nowhere. Lindeen estimated Brammer's truck and the Jeep were both traveling about 70 miles per hour before the collision. Neither Lindeen nor White wore their seat belts.

Brammer's fiancée, Sally Adkins, was riding in the Jeep's rear passenger seat. She testified the Jeep was going 40 to 45 miles per hour, which she thought was not too fast for the conditions. She also testified White was driving 50 to 55 miles per hour, and the Jeep had to move over to miss hitting the truck. She admits she did not see the crash but went back to find Brammer after he did not show up where he was expected.

A Kansas highway patrol trooper investigated. He testified he could not locate any pre-impact marks on the roadway by either driver, which the trooper took to mean no evasive action was taken. He said it was impossible to determine either vehicle's speed, but the impact occurred in the dead center of the roadway, which is where the trooper expected the vehicles to be traveling on this road. The trooper found no indication Brammer drove erratically.

Medical personnel assisting Brammer told the trooper they could smell alcohol. In his crash report, the trooper indicated alcohol was a contributing factor, as well as the dust. Brammer was charged with involuntary manslaughter while DUI under two

4

alternative theories: (1) he was under the influence of alcohol "to a degree that rendered him incapable of safely driving a vehicle"; or (2) he had a blood alcohol concentration of .08 or more. See K.S.A. 2009 Supp. 8-1567.

A forensic toxicologist testified at trial about alcohol elimination rates. She expressed the opinion that Brammer's blood alcohol level would have been higher than .11 when the vehicles collided, assuming he had not had anything to drink during the hours between the collision and the blood draw. She also explained that generally someone with a .11 blood alcohol level would have slightly increased risk-taking potential, while probably exhibiting slurred speech, decreased visual acuity affecting sharpness and depth perception, and slowed comprehension of information and reaction speed. The toxicologist concluded these things would affect a person's ability to drive.

Brammer's defense theory denied his intoxication was the proximate cause of the collision. Defense counsel's theme was that no one was at fault because the collision was simply an accident. For example, counsel stated, "I am going to argue fault, lack of fault. This was an accident that just happened. It was an accident."

The jury was instructed on involuntary manslaughter while DUI and the lesser included offense of DUI. Brammer was convicted of involuntary manslaughter while DUI with an alcohol concentration of .08 or more.

The Court of Appeals affirmed the conviction. It declined to reach the merits of Brammer's alternative means argument, focusing instead on the fact that only one of the alleged means was listed on the verdict form. The panel concluded there was no doubt the jury convicted on Brammer's actual driving while intoxicated because that was the question on the verdict form. *Brammer*, 2013 WL 2395296, at *4. It also held Brammer did not preserve his challenge to the proximate cause instruction by submitting written

5

proposed instructions in advance of trial. 2013 WL 2395296, at *5. The panel applied clear error review and determined it was not error to omit the jury instruction Brammer proposed. Judge G. Gordon Atcheson concurred as to this point based on the clear error standard. 2013 WL 2395296, at *10. The panel further held the district court's instructions on lesser included offenses did not amount to clear error. 2013 WL 2395296, at *12.

Brammer petitioned for this court's review of all issues raised to the Court of Appeals. He argues the panel wrongly relied on the verdict form to reject his alternative means argument and continues to argue there was insufficient evidence to convict of involuntary manslaughter because the jury was instructed that it must find Brammer unintentionally killed White "in the commission of, while attempting to commit, or while in flight from committing or attempting to commit" DUI based on K.S.A. 21-3442. He also renews his challenges to the jury instructions regarding proximate cause, the sequencing of jury consideration of the lesser included offense, and failure to give a reasonable doubt instruction for the lesser included offense.

We granted review under K.S.A. 20-3018(b). Jurisdiction is proper under K.S.A. 60-2101(b) (review of Court of Appeals decisions upon timely petition for review).

NO ALTERNATIVE MEANS INSTRUCTED

Kansas recognizes an "alternative means rule" or its corollary the "super-sufficiency requirement," stating:

"'[W]here a single offense may be committed in more than one way, there must be jury unanimity as to guilt for the single crime charged. Unanimity is not required, however, as to the means by which the crime was committed so long as substantial evidence supports

6

each alternative means. [Citations omitted.]'" *State v. Timley*, 255 Kan. 286, 289, 875 P.2d 242 (1994) (quoting *State v. Kitchen*, 110 Wash. 2d 403, 410, 756 P.2d 105 [1988]).

Whether a statute creates alternative means is an issue of statutory interpretation, raising questions of law appellate courts review de novo. *State v. Brown*, 299 Kan. 1021, 1031, 327 P.3d 1002 (2014).

In Brammer's case, the jury was instructed that involuntary manslaughter is the unintentional killing "in the commission of, while attempting to commit, or while in flight from committing or attempting to commit the act of operating any vehicle . . . while having an alcohol concentration in his blood of .08 or more." Brammer argues this language creates three means of committing involuntary manslaughter, while the State only proved he was driving. Brammer seeks reversal of his conviction because there was insufficient evidence of the other means.

As mentioned, the Court of Appeals avoided Brammer's alternative means argument by focusing on the verdict form's more specific language. See *Brammer*, 2013 WL 2395296, at *4 ("[W]e resolve this issue without deciding whether involuntary manslaughter while DUI is an alternative means offense."). The panel held the verdict form made clear the jury found Brammer violated the statute by driving, so his statutory right to a unanimous verdict was not violated. 2013 WL 2395296, at *4. The verdict form simply stated: "We, the jury, find the defendant guilty of involuntary manslaughter while driving under the influence of alcohol with an alcohol concentration of .08 or more."

But it is unnecessary to go down the panel's analytical path concerning the verdict form because our caselaw has resolved the alternative means challenge based on the statutory language. The involuntary manslaughter statute states in relevant part: "Involuntary manslaughter while driving under the influence of alcohol or drugs is the

7

unintentional killing of a human being committed *in the commission of, or attempt to commit, or flight*" from DUI. (Emphasis added.) K.S.A. 21-3442. The italicized language is identical to the legislative phrasing in the felony-murder statute, which has been held to describe the factual circumstances that would prove the crime, and not create alternative means. *State v. Cheffen*, 297 Kan. 689, 700-01, 303 P.3d 1261 (2013).

Using the same rationale as *Cheffen*, we hold that K.S.A. 21-3442 identifies three factual circumstances in which a material element of the crime may be proven. It does not create alternative means of committing involuntary manslaughter while driving under the influence.

THE JURY INSTRUCTION CHALLENGES

Brammer raises three jury instruction issues: (1) a challenge to the court's causation instruction as given and its rejection of an additional causation instruction Brammer proposed; (2) a challenge to the district court's lesser included offense instructions, which Brammer claims created an improper sequence for the jury's review; and (3) the failure to give the reasonable doubt language from PIK Crim. 3d 68.09 for the lesser included offense.

*Standard of Review*

The general framework for reviewing jury instructions applies:

"For jury instruction issues, the progression of analysis and corresponding standards of review on appeal are: (1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should

8

determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012)." *Plummer*, 295 Kan. 156, Syl.¶ 1, 283 P.3d 202 (2012).

*Preservation*

The failure to give a jury instruction is reviewed for clear error unless the issue is properly preserved. *State v. Williams*, 295 Kan. 506, Syl. ¶ 3, 286 P.3d 195 (2012). Brammer claims he preserved his jury instruction challenges by submitting proposed written instructions in advance of trial that differed from those given by the trial court. But this was not sufficient to avoid clear error review as shown by the trial record.

When the district court prepared its draft jury instructions in advance of the instructions conference during trial, the district court omitted the reasonable doubt instruction paragraph from PIK Crim. 3d 68.09 that Brammer had requested, added language to the PIK Crim. 3d 70.01B (lesser included offenses) instruction at the State's request, and used a portion of Brammer's requested causation instruction, while omitting another portion. At the instructions conference, the district court began by confirming counsel each had a copy of its proposed instructions. It then explained the court would identify each instruction page-by-page, while marking a number on each and indicating that for the record. At this juncture, the court advised counsel: "You will then have the right to object. If there's no objection stated then I will move on. If you wish additional language to be added or otherwise then state it at that time."

The court then proceeded in that manner through the instructions. The only interruption came when Brammer suggested an addition to Instruction No. 12 (chemical

9

analysis of defendant's blood) which was denied but is not an issue on appeal. The court then resumed without interruption through the remaining instructions. At that point, the court asked the State if it had "other instructions being requested." The State responded in the negative. The court then asked the same question to Brammer's counsel, who also said no.

This court recently applied clear error review when the defendant did not object at trial and defense counsel specifically disclaimed any objection during the instructions conference. *State v. Waggoner*, 297 Kan. 94, 97-98, 298 P.3d 333 (2013) (citing K.S.A. 22-3414[3] and *Williams*, 295 Kan. 506). Brammer's attorney similarly disclaimed any objection to the court's instruction during the instructions conference. The only distinction from *Waggoner* is that Brammer had submitted a written request for different instructions before the instructions conference.

It is difficult to see how Brammer's pretrial submission should change the result given the statutory language in K.S.A. 22-3414(3), which states in pertinent part:

> "(3) At the close of the evidence or at such earlier time during the trial as the judge reasonably directs, *any party may file written requests that the court instruct the jury on the law as set forth in the requests. . . .*
>
> "The court shall pass upon the objections to the instructions and shall either give each instruction as requested or proposed or refuse to do so, or give the requested instruction with modification. All instructions given or requested must be filed as a part of the record of the case.
>
> "*The court reporter shall record all objections to the instructions given or refused by the court, together with modifications made, and the rulings of the court.*

"*No party may assign as error the giving or failure to give an instruction . . . unless the party objects thereto before the jury retires to consider its verdict stating distinctly the matter to which the party objects and the grounds of the objection unless the instruction or the failure to give an instruction is clearly erroneous*. Opportunity shall be given to make the objections out of the hearing of the jury." (Emphasis added.)

The statute clearly delineates between "written requests" for instructions, which may be filed at any time, and "objections," which must be recorded by the court reporter. Moreover, K.S.A. 22-3414(3) requires counsel to make a record of any objection to the proposed instructions, distinctly stating that objection and the grounds for it.

Reading K.S.A. 22-3414(3) in its entirety, it is apparent an objection to a proposed instruction, or the absence of an instruction from those proposed, must be made on the trial record before the jury begins its deliberations. This statutory requirement allows for review of any objection out of the jury's presence, ensures the district court is aware counsel remains dissatisfied with the instructions proposed, and gives the court opportunity to consider any arguments relating to that dissatisfaction in light of the evidence adduced at trial.

Based on K.S.A. 22-3414(3) and *Waggoner*, we hold that an attorney must object on the record to the giving or omission of an instruction before the jury retires to consider the verdict, with counsel clearly stating the reason for the objection. It is not sufficient to simply have filed proposed instructions before trial to preserve a later challenge under our general framework for reviewing jury instructions on appeal.

Given this holding, we will apply clear error review to Brammer's instructions challenges—if we find error. See K.S.A. 22-3413(3). To reverse for clear error, the court must be firmly convinced the jury would have reached a different verdict had the instruction error not occurred. *Williams*, 295 Kan. 506, Syl. ¶ 5.

11

*The Causation Instruction*

Brammer proposed prior to trial to make the following two-paragraph addition to the pattern involuntary manslaughter instruction, PIK Crim. 3d 56.06-A:

"The fault or lack of fault of Jason Brammer is a circumstance to be considered along with all the other evidence to determine whether the defendant's conduct was or was not the direct cause of Taylor White's death. See *State v. Collins*, 36 Kan. App. 2d 367, 138 P3d 793 (Kan. App. 2006).

"While contributory negligence is no defense in a prosecution for a driving offense of involuntary manslaughter, it is a circumstance to be considered along with all other evidence to determine whether Jason Brammer's conduct was or was not the proximate cause of Taylor White's death. You may consider the conduct of Taylor White to determine if his contributory negligence may have been a substantial factor in his death. See *State v. Chastain*, 265 Kan. 16, 960 P.2d 756 (Kan. 1998)."

The district court included the first paragraph verbatim without the case citation, but rejected the second entirely.

The PIK comment states:

"'A conviction of the crime of involuntary manslaughter while driving under the influence of alcohol requires evidence that the conduct of the defendant was the cause of the victim's death. If causation is an issue in the case, the jury should be instructed: 'The fault or lack of fault of [decedent] is a circumstance to be considered along with all the other evidence to determine whether the defendant's conduct was or was not the direct cause of [decedent's] death.' *State v. Collins*, 36 Kan. App. 2d 367, 138 P.3d 1262 (2006)." PIK Crim. 3d 56.06-A.

12

The *Brammer* panel *sua sponte* noticed Brammer's requested instruction deviated from the PIK comment because Brammer's name was inserted in the first blank intended for the decedent's, *i.e.*: "The fault or lack of fault of *Brammer* is a circumstance to be considered . . . ." (Emphasis added.) Neither the State nor the district court caught the error, and the instruction was given as proposed.

On appeal, Brammer does not challenge the instruction given on the basis that Brammer's name was substituted for White's. And the panel held any error was invited or waived because Brammer submitted it. *Brammer*, 2013 WL 2395296, at *8. The panel held the instruction as given otherwise accurately stated the law, because it notified the jury of its obligation to consider any additional factors including White's contributory negligence. 2013 WL 2395296, at *8.

Brammer did not petition for review of the panel's holding regarding the first paragraph. Our focus then is on Brammer's challenge to the district court's refusal to give the second paragraph of his proposed instruction, although we will see that the transposed names must enter into our analysis in considering whether it was error to omit the second paragraph.

The causation language Brammer proposed derived from *State v. Chastain*, 265 Kan. 16, Syl. ¶ 7, 960 P.2d 756 (1998). Chastain was charged with involuntary manslaughter while DUI, but the jury convicted of the lesser included offense of DUI. Chastain claimed the decedent caused his own death by entering an intersection without stopping at a stop sign. The State claimed Chastain caused the death by speeding while under the influence of alcohol. During deliberations, the jury asked whether it should consider each driver's fault when deciding if Chastain unintentionally killed the decedent. The trial court responded that "the fault or lack of fault of the decedent . . . was a circumstance to be considered along with all other evidence to determine whether the

defendant's conduct was or was not the direct cause of [the] death." 265 Kan. at 24. Notably, this is the same language in the PIK Comment and issued in Brammer's case, albeit with his name where White's was supposed to be.

The *Chastain* court held that the trial court's response "is clearly the law in this state," citing the following quote:

"While contributory negligence is no defense in a prosecution for vehicular homicide, it is a circumstance to be considered along with all other evidence to determine whether appellant's conduct was or was not the proximate cause of decedents' deaths. In some instances, a decedent's contributory negligence may have been a substantial factor in his death and a superseding cause thereof; it may have intervened between a defendant's conduct and the fatal result so as to be itself the proximate cause." 265 Kan. at 24 (quoting *State v. Gordon*, 219 Kan. 643, 653, 549 P.2d 886 [1976]).

The *Chastain* court then noted the same situation applies to involuntary manslaughter when an automobile is involved. 265 Kan. at 24.

Absent the erroneous substitution of Brammer's name for "the decedent," Brammer's jury was instructed exactly as the *Chastain* court held was "clearly the law in this state." 265 Kan. at 24. See also *State v. Collins*, 36 Kan. App. 2d 367, 372, 138 P.3d 793 (2006) (recommending the same causation jury instruction as in Brammer's case). And were it not for the unique circumstance that Brammer's name was shown where the decedent's name should have been, we would simply conclude Brammer's argument lacks merit.

But the unique factual twist of Brammer's name inserted for the decedent's forces us to conclude that the second paragraph, although otherwise redundant had the first paragraph been properly stated, would have served a clarifying function to ensure the jury

14

knew it could consider White's contributory negligence, if any. Accordingly, we will move to the next step to decide whether the failure to give the second requested paragraph requires reversal, *i.e.*, whether we are firmly convinced the jury would have reached a different verdict had the instruction error not occurred. *Williams*, 295 Kan. 506, Syl. ¶ 5.

*Clear error analysis*

It is necessary for this step to consider the evidence offered, while recalling that Brammer's argument at trial was that no one was at fault. Similarly, Brammer did not present expert opinion testimony to show White was at fault in his own death. But despite this lack of argument and testimony, Brammer now argues on appeal: "The jury could have found that either the road conditions of the day or Mr. White's driving or Mr. White's failure to wear a seat belt were 'superseding causes' and that, therefore, Mr. Brammer was not criminally responsible for Mr. White's death."

As noted by the panel, there was considerable direct and opinion evidence produced by the State to show Brammer's driving while intoxicated caused White's death. *Brammer*, 2013 WL 2395296, at *10 ("A reasonable factfinder could have concluded beyond a reasonable doubt that Brammer was driving down the center of the road at an excessive speed in the dust cloud of a preceding vehicle because alcohol had affected his perception and judgment."). This conclusion is supported by Lindeen's testimony, the trooper's investigation, the forensic toxicologist, and the lab results. Nor are we persuaded White's failure to wear a seat belt is relevant to this analysis. See K.S.A. 8-2504(c) ("Evidence of failure of any person to use a safety belt shall not be admissible in any action for the purpose of determining any aspect of comparative negligence or mitigation of damages."). This is especially true given Brammer's failure to argue White's seat belt usage constituted an intervening cause of his death or to introduce evidence that

15

White would have survived the collision if he had worn a seat belt. See *State v. Spencer*, No. 103,170, 2011 WL 4440419, at *8 (Kan. App. 2011) (unpublished opinion) (defendant was not entitled to intervening cause instruction when he did not argue victim's failure to wear her seat belt caused her death or that she would have survived if she was wearing a seat belt).

We are not firmly convinced the jury would have reached a different verdict had it been given the second paragraph of Brammer's proposed instruction.

*Sequencing Instructions*

Brammer also argues the jury was erroneously instructed to consider the charged offense before considering the lesser included offense, citing Instruction No. 15. But this argument implicates Instruction Nos. 13, 14, and 15 which all contain similar sequential language.

The district court's instructions informed the jury in Instruction No. 14: "If you don't agree that the defendant is guilty of Involuntary Manslaughter While Driving Under the Influence of Alcohol, you should *then* consider the lesser included offense of Operating or Attempting to Operate a Vehicle While Under the Influence of Alcohol . . . ." (Emphasis added.) Instruction No. 13 for DUI with an alcohol concentration of .08 or more included identical language, except the word "then" was omitted. This sequencing was restated in Instruction No. 15 when the jury was instructed:

> "If you don't agree that the defendant is guilty of Involuntary Manslaughter While Driving Under the Influence of Alcohol, you should then consider if the defendant is guilty of the lesser included offense of operating or attempting to operate a vehicle while having a blood alcohol concentration of .08 or more and sign the verdict upon which you agree.

16

"You should then further consider if the defendant is guilty of operating or attempting to operate a vehicle while under the influence of alcohol to a degree that rendered him incapable of safely driving a vehicle and sign the verdict upon which you agree."

Brammer argues "a jury must consider lesser offenses in conjunction with the primary offense," so it was error to instruct it to consider lesser offenses after the primary offense. He cites *State v. Miller*, 293 Kan. 46, 259 P.3d 701 (2011), and argues "[l]ike *Miller*, the jury in this case was instructed to examine the primary and lesser included offenses in a sequential manner."

In *Miller*, the defendant was charged with premeditated first-degree murder and instructed on the lesser included offenses of second-degree murder and voluntary manslaughter. In one instruction, the jury was told to consider second-degree murder and voluntary manslaughter simultaneously. In another instruction, it was told to consider second-degree murder first. Miller argued the instructions were inconsistent, making it possible for the jury to convict him of second-degree murder without considering voluntary manslaughter. 293 Kan. at 48-49. Notably, Miller did not challenge how the jury was instructed on the primary offense, first-degree murder.

The *Miller* court concluded it was clear error to give the jury contradictory instructions under the facts of the case. It noted the hazard of sequential consideration under these facts, specifically that if the jury considered second-degree murder before voluntary manslaughter, it may not have considered whether the killing occurred in the heat of passion or a sudden quarrel. 293 Kan. at 52-53.

But *Miller* is distinguishable from the facts in Brammer's case because contradictory instructions were not issued. The crimes are also fundamentally different

17

because the State necessarily proved DUI if it proved the involuntary manslaughter. In other words, the concern in *Miller* that the jury would not consider the unique elements of the lesser offense is not present.

Moreover, in the context of a prosecutorial misconduct claim, this court has held it would be improper to inform the jury that all 12 jurors must agree that there is reasonable doubt as to a greater offense before it may consider lesser included offenses. *State v. Hurt*, 278 Kan. 676, 682, 101 P.3d 1249 (2004). But the instructions issued in Brammer's case do not require a unanimous decision on the primary charge before consideration of the lesser charges. The sequencing instructions were not erroneous.

*The Reasonable Doubt Instruction from PIK Crim. 3d 68.09*

Brammer argues the jury instructions should have included reasonable doubt language from an instruction he proposed based on PIK Crim. 3d 68.09, which reads:

> "The offense of Involuntary Manslaughter-Driving Under the Influence with which defendant is charged includes the lesser offense of Driving Under the Influence.

> "You may find the defendant guilty or not guilty of Involuntary Manslaughter-Driving Under the Influence.

> "You may find the defendant guilty or not guilty of Driving Under the Influence.

> "*When there is a reasonable doubt as to which of two or more offenses defendant is guilty, he may be convicted of the lesser offense only.*

> "Your Presiding Juror should mark the appropriate verdict." (Emphasis added.)

This court has held the failure to instruct the jury in accordance with PIK Crim. 3d 68.09 was erroneous on three prior occasions but declined to find clear error: *State v. Hall*, 292 Kan. 841, 858, 257 P.3d 272 (2011) (error but not clear error because State presented substantial evidence of primary offense); *State v. Massey*, 242 Kan. 252, 262, 747 P.2d 802 (1987) (error was not clearly erroneous); and *State v. Trujillo*, 225 Kan. 320, 323, 590 P.2d 1027 (1979) (same). But none of these decisions articulate why the instruction is required. Instead, they simply focus on the fact that it is an accurate statement of the law under K.S.A. 21-3109. See *Hall*, 292 Kan. at 858. The statute states:

> "A defendant is presumed to be innocent until the contrary is proved. When there is a reasonable doubt as to his guilt, he must be acquitted. *When there is a reasonable doubt as to which of two or more degrees of an offense he is guilty, he may be convicted of the lowest degree only.*" (Emphasis added.)

In light of K.S.A. 21-3109, we agree the requested language at issue is an accurate statement of the law. We also have no doubt it would be an appropriate practice to give the instruction. But that does not necessarily explain why it would be error to omit it.

In challenging the omission of this reasonable doubt language in the lesser included offense context, Brammer argues only: "Had the jury been told that if there was any reasonable doubt as to whether Mr. Brammer committed the primary offense of DUI—manslaughter or the lesser offense of DUI, that it need to convict on the lesser only, there is a real possibility that the jury would have returned a different verdict." He makes no reference to *Hall*, *Massey*, or *Trujillo*.

The panel unanimously held the omission was not error in Brammer's case because the instructions, taken as a whole, sufficiently informed the jury of the reasonable doubt standard. *Brammer*, 2013 WL 2395296, at *12. That analysis has merit. Brammer's jury

was instructed that the State had to prove each element of the involuntary manslaughter charge through PIK Crim. 3d 52.02, which states:

> "The test you must use in determining whether the defendant is guilty or not guilty is this: If you have a reasonable doubt as to the truth of any of the claims required to be proved by the State, you must find the defendant not guilty. If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you should find the defendant guilty."

PIK Crim. 3d 68.07 was also given. It explained to the jury that its decision on one charge should not influence its decision on another:

> "Each crime charged against the defendant is a separate and distinct offense. You must decide each charge separately on the evidence and law applicable to it, uninfluenced by your decision as to any other charge. The defendant may be convicted or acquitted on any or all of the offenses charged. Your finding as to each crime charged must be stated in a Verdict Form signed by the Presiding Juror."

PIK Crim. 3d 68.09 may reiterate that the jury cannot convict Brammer of the charged offense if the State did not prove it beyond a reasonable doubt, but it is not essential to convey that point. It is difficult to discern how the omission is error, but in keeping with our prior caselaw and in view of the evidence supporting the involuntary manslaughter conviction, we also agree with the panel that the omission was not clear error.

The judgment of the Court of Appeals is affirmed. The judgment of the district court is affirmed.