NOT DESIGNATED FOR PUBLICATION

No. 113,214

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

CHARLETTE HOVER,
a/k/a Charlette Ann Jenkins,
*Appellant.*

MEMORANDUM OPINION

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed December 18, 2015. Reversed and remanded.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., HILL and STANDRIDGE, JJ.

*Per Curiam*: Charlette Hover appeals her conviction of aggravated battery. Hover claims the district court erred by instructing the jury on aiding and abetting, in response to a jury question during deliberations, when neither party had argued aiding and abetting during the trial. Specifically, Hover asserts that the instruction violated her constitutional right to present a full and complete defense by introducing a new theory of culpability in a supplemental jury instruction after the close of the evidence. For the reasons stated herein, we agree that the district court committed reversible error by giving the aiding and abetting instruction in response to the jury question, and we remand for a new trial.

1

The facts are somewhat confusing and involve a large group of people. On the evening of February 19, 2011, a group of people went to Ashley Spencer's apartment building in Hutchinson. The group included Hover; her daughter, Kelsie; her son, Trevor; her boyfriend, Jay; and Renae Manwarren and her father, Rick Manwarren, who lived with Hover. They were looking for Trevor's ex-girlfriend, who had been sending insulting text messages to Hover, and who Trevor believed was staying with Spencer.

Spencer came downstairs to the lobby of the apartment building. Witnesses later testified that Hover, Kelsie, and Renae began punching Spencer and kicking her after she fell to the ground. The beating stopped when a neighbor said that the police had been called. At that point, Hover's group went back to their house.

Shortly after 10 p.m., Detective Curtis Black of the Hutchinson Police Department was dispatched to Spencer's address to investigate reports of females fighting in the lobby. Black spoke with Spencer, who was bleeding from her nose, had multiple bruises and marks on her shoulders and face, and exhibited swelling on her head. After Spencer told Black that she had been attacked by a group of people, Black spoke to other witnesses, who identified Hover and some of the others involved in the altercation. Black then went to Hover's home and spoke with her about the incident. Hover initially denied being at Spencer's apartment building and claimed that the witnesses had purposely misidentified her as part of a dispute she was having with Trevor's ex-girlfriend.

Spencer was treated for her injuries in the emergency room. Dr. Richard Price later testified that Spencer appeared to be in pain; had swelling in multiple locations on her head; had bruising around her eyes, scalp, ears, and chest; and suffered tenderness around her right hip. Spencer also suffered a nasal bone fracture, but was released from the emergency room with a prescription for painkillers.

2

The State subsequently charged Hover, Kelsie, and Renae with aggravated battery for intentionally causing great bodily harm to Spencer. Renae later pled guilty to aggravated battery as a result of the incident, and Kelsie later was convicted of aggravated battery.

Hover's jury trial began on March 27, 2012. We will review the highly-conflicting testimony in detail. Spencer testified for the State, identifying Hover as having punched her in the nose immediately before the group entered the apartment building. Spencer also testified about her injuries, which she said took 2 or 3 weeks to heal but did not result in permanent scarring or disfigurement.

The State next presented testimony from Cheyanne White, who was at Spencer's apartment on the night in question. White testified that she did not know who Hover was at the time of the beating, but that she saw Hover hit Spencer more than 10 times. Similarly, Robert Tetrick, who also had been at Spencer's apartment, testified to events consistent with those related by Spencer and White. Tetrick identified Hover as one of the women who beat Spencer, but could not identify who had thrown the first punch.

Kurtis King and Courtney Brown, who had both been at the apartment building on the night in question, testified for the State. King testified that he saw Hover and another female punch and kick Spencer; King estimated he saw Hover kick and hit Spencer 20 times. Brown stated that she saw Spencer being beaten and kicked by three females, but she could not identify any of the females. Jacob Perez, another person at Spencer's apartment that evening, testified that he saw Hover in the lobby of the apartment building but could not state whether she was involved in the physical attack on Spencer.

Price testified about treating Spencer in the emergency room, and Black testified about his interactions with Spencer, Hover, and other witnesses. Renae also testified for the State about going to Spencer's apartment building. Renae said that as soon as Spencer

3

opened the door to the building, Hover swung at Spencer. Renae later testified that although she was not positive whether Hover or Kelsie hit Spencer first, she had seen Hover hit Spencer.

After the State rested, the defense called Trevor, who testified that Kelsie and Renae fought with Spencer while Hover yelled at Spencer and tried to pull Kelsie out of the fight. Similarly, Kelsie testified for the defense that she was the one who hit and kicked Spencer and that Hover tried to get her to stop. Kelsie also testified that Hover is a hemophiliac, which causes her to bruise easily. This testimony was offered in response to Black's testimony that he had not noticed any injuries on Hover's hands when he interviewed Hover after the fight. For her last witness, Hover called Jesse Suppes, who testified that he was with the group who went from Hover's home to Spencer's apartment building. Suppes stated that Kelsie had "snapped and went after [Spencer]" but that he did not see Hover hit or kick Spencer. Suppes asserted that Hover was trying to break up the fight. Hover did not testify in her defense.

After the evidence was presented, the district court instructed the jury that it could find Hover guilty of aggravated battery for causing great bodily harm, aggravated battery for causing bodily harm, battery, or not guilty. In closing argument, the prosecutor argued that the jury should find Hover guilty of aggravated battery for causing great bodily harm to Spencer. Hover's counsel argued that the jury should return a verdict of not guilty.

During deliberations, the jury sent out a written question: "If we determine that the defendant was guilty of battery, does she share responsibility for all the harm that was done[?]" The judge met with counsel and Hover and proposed to answer the question by giving the PIK instruction on aiding and abetting. Hover's counsel objected to the instruction on the ground that it was not supported by the evidence. The judge overruled the objection, brought the jury into the courtroom, and instructed the jury as follows:

4

"A person who either before or during its commission intentionally aids, abets, advises, counsels or procures another to commit a crime with intent to promote or assist in its commission is criminally responsible for the crime committed regardless of the extent of the defendant's participation, if any, in the actual commission of the crime."

The jury convicted Hover of the lesser offense of aggravated battery resulting in bodily harm. On May 11, 2012, the district court sentenced Hover to 23 months' imprisonment but placed her on probation with community corrections for 24 months. Hover filed an appeal which was twice dismissed because the district court had not yet determined the amount of restitution. In a hearing on July 17, 2014, the district court ultimately found that Hover did not owe any restitution. On February 3, 2015, Hover filed a motion to docket her appeal out of time, which this court granted.

In her sole issue on appeal, Hover contends that the district court committed reversible error by giving the aiding and abetting jury instruction during deliberations. Specifically, Hover argues that giving the instruction violated her constitutional right to present a full and complete defense because it introduced a new theory of culpability after the close of the evidence. The State responds that the instruction was legally appropriate and that any error was harmless due to the overwhelming evidence against Hover.

K.S.A. 22-3420(3), in effect at the time of Hover's trial, provided that after the jury has retired for deliberation, the jury may request the district court to provide further information on a point of law or the evidence presented at the trial. Here, the jury sent out a written question: "If we determine that the defendant was guilty of battery, does she share responsibility for all the harm that was done[?]" It is difficult to know exactly what information the jury wanted to receive by asking this question, but the district court did not seek clarification. Instead, the district court responded to the question by giving the standard PIK instruction on aiding and abetting, over Hover's objection. Thus, we will consider Hover's issue on appeal as a challenge to the jury instruction.

5

The standard of review when addressing challenges to jury instructions is based upon the following analysis:

> "'(1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error [requires reversal]." *State v. Brammer*, 301 Kan. 333, 339, 343 P.3d 75 (2015).

We first address whether Hover has preserved the issue for appeal. In district court, Hover objected to the supplemental jury instruction on aiding and abetting on the ground that it was not supported by the evidence. On appeal, Hover challenges the jury instruction on constitutional grounds. However, when a jury instruction issue is raised on appeal, this court may review the instruction even if the appellant did not challenge the instruction below or challenges the instruction on different grounds on appeal; the failure to properly preserve the issue for review affects only the reversibility portion of appellate analysis. See *Brammer*, 301 Kan. at 339.

We next address whether the aiding and abetting instruction was legally appropriate. During the trial, the State did not argue that Hover was guilty as an aider and abettor. On the contrary, the State argued that Hover was directly and principally guilty of aggravated battery. The prosecutor concluded his argument by stating, "When you look at all of the evidence the [S]tate submits that you'll find that Ashley Spencer was beaten by this defendant and that she's guilty of aggravated battery, great bodily harm."

Hover's defense was that the State had failed to prove its case. Hover pointed out the variances in the witnesses' trial testimony and attempted to undermine the State's

6

witnesses' credibility. Moreover, Hover argued that her hemophilia would have resulted in bruises on her hands had she been fighting, but she had no bruises. Hover offered the jury an alternative explanation of the fight:  that Kelsie and Renae were the ones who hit Spencer and Hover was trying to break up the fight.

We find that the aiding and abetting instruction was not legally appropriate for the simple reason that neither party asserted an aiding and abetting theory during the trial. Moreover, Hover argues that the instruction was legally inappropriate because giving it violated her constitutional right to present a defense—she was unable to present a defense to or argue against the theory that she was guilty as an aider and abettor since that theory was not introduced until after the close of evidence and argument.

Hover cites *United States v. Gaskins*, 849 F.2d 454 (9th Cir. 1988), to support her argument. In that case, the defendant was on trial for possession of methamphetamine with intent to distribute and manufacturing methamphetamine. The government requested a jury instruction on aiding and abetting, but the district court ruled that it would not give the instruction. After the jury began deliberating, it sent a question to the court, inquiring about the level of involvement necessary to constitute "manufacturing."849 F.2d at 456. The government asked the court to respond by giving an aiding and abetting jury instruction; defense counsel objected because she had not addressed aiding and abetting in her argument to the jury. Defense counsel argued that if the court gave the instruction, she should be granted leave to reopen closing argument. The district court denied the request to reopen argument and instructed the jury on aiding and abetting. Shortly thereafter, the jury convicted the defendant of possession of methamphetamine and manufacturing methamphetamine. 849 F.2d at 457.

On appeal, the defendant argued that the district court violated Federal Rule of Criminal Procedure 30 by giving the aiding and abetting instruction mid-deliberation despite expressly ruling earlier that it would not give the instruction. 849 F.2d at 459. The

7

Ninth Circuit Court of Appeals noted that the government did not argue that giving the instruction did not violate Fed. R. Crim. Proc. 30; rather, the argument was over whether the violation required reversal. 849 F.2d at 458. The Ninth Circuit agreed with other federal courts that the section of the United States Code that allows aiders and abettors to be punishable as principals does not define a new or distinct offense. 849 F.2d at 458-59. But the court went on to say: "Nonetheless, arguments based on convicting a defendant as a principal or convicting a defendant as an aider and abettor are based on two conceptually different theories. [Citations omitted.]" 849 F.2d at 459.

The Ninth Circuit held that the district court's actions prevented defense counsel from arguing against an aiding and abetting theory during closing argument, and the court was unable to find that the district court's instruction did not impair the effectiveness of counsel's argument and presentation of the defense. 849 F.2d at 460. Accordingly, the court reversed and remanded for a new trial. 849 F.2d at 460.

Although the court's analysis in *Gaskins* was premised on Rule 30 of the Federal Rules of Criminal Procedure, which was not applicable in Hover's proceedings, the decision is nonetheless instructive. Similarly, other jurisdictions have found error when a district court instructed the jury on a new theory of guilt in response to a jury question made after deliberations had begun. See *People v. Laabs*, 2011 IL App. (3d) 090913, ¶¶ 15-20, 957 N.E. 2d 1259 (2011); *Cruz v. State*, 407 Md. 202, 209, 220, 963 A. 2d 1184 (2009) (reviewing cases involving supplemental jury instructions giving new theories of liability).

Our Supreme Court has held that the statutory basis for aiding and abetting—now codified at K.S.A. 2014 Supp. 21-5210—does not create new and distinct crimes. *State v. Betancourt*, 299 Kan. 131, 139, 322 P.3d 353 (2014). Nevertheless, we agree with Hover that she was unable to present a defense or argue against the theory that she was guilty as an aider and abettor since the theory was not introduced until after the jury commenced

8

deliberations. As a result, we conclude it was legally inappropriate for the district court to give a supplemental jury instruction, mid-deliberation, that introduced the aiding and abetting theory of liability when neither party had asserted this theory during the trial.

Next, we address whether there was sufficient evidence to support the aiding and abetting instruction. While convicting someone as a principal requires showing only that the accused committed all of the acts of the substantive offense while possessing the requisite mental state, convicting someone under a theory of aiding and abetting requires showing that the accused had the specific intent to facilitate another person's commission of a crime. See K.S.A. 2014 Supp. 21-5210(a).

In district court, Hover objected to the aiding and abetting instruction on the ground that it was not supported by the evidence. We agree. As we have already discussed, the State's theory was that Hover was guilty of aggravated battery as a principal actor. All the State's evidence supported that theory. Indeed, the State presented at least five witnesses who testified that Hover struck Spencer at the apartment building.

The State's evidence showed that three people were involved in beating Spencer—Hover, Kelsie, and Renae. Although Hover may have had accomplices in committing the crime, this evidence does not establish that she was guilty as an aider and abettor. There was no evidence that Hover had the specific intent to facilitate another person to commit the crime, such as by acting as a lookout or by preventing other people from coming to the aid of Spencer. To the contrary, the evidence supported a conclusion that Hover either was guilty of some form of battery as a principal actor or she was not guilty of any crime.

To sum up so far, we conclude that the supplemental jury instruction on aiding and abetting was neither legally nor factually appropriate. Thus, the district court erred in giving the instruction. This brings us to the final step of the analysis which is to determine whether the error requires reversal. See *Brammer*, 301 Kan. at 339.

9

As stated above, because Hover challenges the jury instruction on appeal asserting a different ground than was argued in district court, this court may reverse only if we find that giving the instruction was clearly erroneous. See K.S.A. 2014 Supp. 22-3414(3); see also *State v. Barber*, 302 Kan. 367, 377, 353 P.3d 1108 (2015). An instruction is clearly erroneous when this court """is firmly convinced that the jury would have rendered a different verdict had the instruction error not occurred.""" See *State v. Brown*, 300 Kan. 542, 555, 331 P.3d 781 (2014) (applying to jury instruction issues); see also *State v. Lewis*, 299 Kan. 828, 855-56, 326 P.3d 387 (2014) (holding that the clearly erroneous reversibility test applies to responses to mid-deliberations jury questions). The party asserting clear error bears the burden to establish the required prejudice. See *Brown*, 300 Kan. at 555.

Hover asserts that had she known that an aiding and abetting theory would be used, her entire trial strategy may have been different. Hover argues that she might have testified at trial, as her specific intent to aid and abet the crime would have been at issue and she would have been the person best situated to testify about her state of mind. Because the State never pursued an aiding and abetting theory, Hover asserts that she reasonably believed she did not have to defend against the theory and she crafted her defense accordingly.

The State responds that the evidence against Hover was overwhelming. We disagree with this assertion. Hover presented three witnesses at trial who testified that Hover did not hit or kick Spencer but instead tried to break up the fight. One of these witnesses, Jesse Suppes, was not related to Hover and his motivation for testifying for the defense was not challenged in any substantial way on cross-examination. Moreover, Hover presented unchallenged testimony through other witnesses that she is a hemophiliac, which causes her to bruise easily, yet Detective Black did not notice any injuries on Hover's hands when he interviewed Hover after the fight.

10

This case essentially boiled down to a credibility contest between witnesses supporting the State's theory—that Hover battered Spencer—and witnesses supporting the defense theory—that Hover was present but did not touch Spencer. By erroneously introducing a new theory of culpability during deliberation, without supplemental argument or presentation of evidence, the district court fundamentally changed the grounds on which the jury could convict Hover. We cannot be sure that the erroneous instruction on aiding and abetting caused the jury's verdict, but there is a real possibility that it did so. Stated differently, after carefully reviewing the entire record, we are firmly convinced there is a real possibility the jury would have rendered a different verdict had the instruction error not occurred. See *Brown*, 300 Kan. at 555. Thus, we conclude the supplemental jury instruction on aiding and abetting was clearly erroneous. As a result, we must reverse Hover's conviction of aggravated battery and remand for a new trial.

Reversed and remanded.