NOT DESIGNATED FOR PUBLICATION

No. 118,773

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

REX EMMANUEL HAYES,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; TIMOTHY P. MCCARTHY, judge. Opinion filed April 12, 2019. Reversed and remanded.

*Heather Cessna*, of Kansas Appellate Defender Office, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., PIERRON, J., and MCANANY, S.J.

PER CURIAM: The State charged Rex Emmanuel Hayes with aggravated battery for an incident involving his girlfriend L.S. At trial, L.S. testified that Hayes strangled, smothered, and hit her. She also testified that she thought she had a concussion because of the abuse.

The district court did not instruct the jury on the lesser included crime of simple battery. The jury found Hayes guilty. As part of his sentence, the district court ordered Hayes to pay restitution without the State presenting evidence supporting the restitution

1

amount requested. Hayes appeals arguing: (1) the district court erred by not instructing the jury on simple battery, (2) the prosecutor committed reversible error during closing argument, and (3) the district court erred by ordering restitution without requiring the State prove the restitution amount requested was correct.

Because we find that it was clear error for the district court not to give the jury an instruction on simple battery, we need not address the other claims of error raised by Hayes. His conviction is reversed, and the case is remanded to the district court.

FACTUAL AND PROCEDURAL HISTORY

In July 2017, the State charged Hayes with (1) aggravated battery, (2) criminal threat, and (3) aggravated intimidation of a witness. The State presented the following evidence at his jury trial.

L.S. and Hayes started dating in December 2015. In June 2016, L.S. was housesitting in Shawnee, Kansas, and invited Hayes to the house. They got into an argument and Hayes started to leave the house. L.S. started crying and asked Hayes why he was leaving. According to L.S., Hayes turned around, choked her, dragged her upstairs, and pushed her to a bed. Then Hayes continued choking L.S. and covering her mouth so she could not breathe. L.S. testified that Hayes covered her mouth, stuck his fingers in her mouth, and plugged her nose. L.S. thought that Hayes was going to kill her.

L.S. testified that Hayes then got behind her and started choking her from behind. She asked Hayes if he was going to kill her and he said that if he was going to he would do it the "right way." Hayes then put L.S. in a chokehold. L.S. said that she could not breathe while Hayes had her in a chokehold. L.S. estimated that the incident lasted for more than 10 minutes. L.S. also testified that Hayes said he would kill her and her dog.

2

L.S. tried to run into a different bedroom and shut the door so she could call the police but was unable to do so. Hayes caught her and pushed her down the stairs. Hayes then punched L.S. in the stomach and poked her in the eye. L.S. got up and tried to run back upstairs into a nearby bathroom but Hayes threw her against a wall. L.S.'s head hit the door frame and she explained that she blacked out for a few seconds. When L.S. woke up she saw Hayes panicking and holding his fingers up asking if L.S. could see them. L.S. went back to the bedroom where she had been sleeping and fell asleep. When asked whether she thought she had a concussion L.S. said, "Yes."

After waking up, L.S. went to get dinner with Hayes. She explained that she was in a "haze and was feeling so tired and like out of sorts." L.S. said the feeling lasted until the next day. L.S. testified that she had a swollen eye but no bruises, broken bones, or other injuries. Due to her fear that Hayes was going to come after her, she did not seek medical attention. She explained that she wanted to pretend everything was normal until she had a restraining order in place.

The day after the incident took place, L.S. went to a charity pub crawl with a friend. The friend already had a bad relationship with Hayes so L.S. did not tell her about the incident because she believed the friend would pressure her into talking to the police immediately. L.S. moved into a new apartment a week later and Hayes helped her move. She explained that she let him help because she wanted to placate him while she was working on getting a restraining order.

L.S. testified that she was familiar with the importance of documenting her interactions with Hayes because of information from a friend who worked at a domestic violence shelter. L.S. saved some text messages from Hayes which she received a few days after the incident took place. The text message from Hayes said "Thanks for finding the statistic. I would never kill you not harm you again, but that's up to you to believe." Hayes goes on to say:

3

"Seeing you is not easy for me either. I have to live with what I did. As do you. I avoid [talking] about it because I don't know how to. I realize, you just have to talk. from the heart. I regret it and just want a second chance [L.S.]. The heart is where all my love and care is coming from Your behavior towards me will not phase me and you endured my behavior too."

Finally, Hayes said that he "told my mom ONLY told her I got physical with you."

L.S. explained that about 20 days later she spoke with the Kansas City, Missouri Police department about the incident. L.S. thought that the officers she spoke with were not helpful and were dismissive. She then spoke with officers from Shawnee, Kansas.

During cross-examination, defense counsel showed the jury pictures taken of L.S. the day following the incident during the charity pub crawl. The pictures show no obvious injuries on L.S.

Shawnee Police Officer George Lozano testified that L.S. reported the incident to him. Lozano's testimony was largely consistent with L.S.'s. Lozano also testified that strangulation does not always leave visible injuries. Lozano noticed no injuries on L.S. Hayes offered no witnesses at trial.

At the jury instruction conference, neither the State nor Hayes requested a lesser included instruction on simple battery and the court did not give one.

In its closing argument, the State discussed the specific elements it had to prove in order for the jury to find Hayes guilty of aggravated battery. The State argued that strangulation and suffocation "absolutely can result in great bodily harm, disfigurement, or death. It doesn't take much to cut off somebody's oxygen supply by compressing their carotid artery or their jugular vein. Once oxygen–once the brain becomes deprived of oxygen, death can happen very quickly afterwards." The State also argued:

4

"[H]aving your head slammed against a doorjamb, having a concussion, that certainly is great bodily harm, disfigurement, or death. Concussions can be lethal. She actually had one. She was dazed. She was confused. She was foggy. She was sleepy. She took a nap for several hours in the middle of the day after this happened."

Hayes' closing argument was largely just a general denial that any physical altercation or threats occurred.

The jury found Hayes guilty of aggravated battery and found that the offense qualified as an act of domestic violence. The jury found Hayes not guilty on the remaining charges.

The court sentenced Hayes to a 13-month term of imprisonment, but released him on 24 months of probation. The State also requested that the court sentence Hayes to pay restitution to the Crime Victims Compensation Board (Board) to reimburse money the Board paid to L.S. Hayes objected to the restitution amount requested because the State had offered no evidence to prove the amount requested was warranted. The court ordered Hayes to pay the requested amount to the Board.

Hayes timely appeals.

ANALYSIS

*The district court erred by failing to give a lesser included offense instruction on simple battery.*

Hayes' first argument on appeal is that the district court erred by failing to sua sponte give a lesser included offense instruction. The State responds that the district court

did not err because the instruction would not have been factually appropriate, or if the court did err, the omission did not amount to clear error.

*Standard of Review*

Whether a crime is a lesser included offense of another is a question of law over which an appellate court has unlimited review. *State v. Carter*, 54 Kan. App. 2d 34, 37, 395 P.3d 458 (2017), *rev. denied* 307 Kan. 989 (2017).

Appellate courts apply a three-step process when analyzing jury instruction issues:

"(1) determining whether the appellate court can or should review the issue, *i.e.,* whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal;
(2) considering the merits of the claim to determine whether error occurred below; and
(3) assessing whether the error requires reversal, *i.e.,* whether the error can be deemed harmless." *State v. Williams*, 295 Kan. 506, 510, 286 P.3d 195 (2012).

If the court finds the instruction was legally and factually appropriate, failing to give the instruction was error. As a result, the court must then determine whether it was harmless error. The standard of review is different based upon whether the instruction was requested. If the defense fails to request a lesser included offense instruction, the burden is on the defendant to show that "'the failure was clearly erroneous, *i.e.*, the defendant must firmly convince the appellate court that the giving of the instruction would have made a difference in the verdict.' [Citation omitted.]" *State v. Cooper*, 303 Kan. 764, 770, 366 P.3d 232 (2016).

*Preservation*

The first step this court takes is to determine whether there was a failure to preserve the issue. See *Williams*, 295 Kan. at 510. Hayes did not request a lesser included

instruction at trial but that does not deprive this court of jurisdiction. Instead this court determines whether the failure to give a lesser included instruction was clearly erroneous. See K.S.A. 2018 Supp. 22-3414(3); *Cooper*, 303 Kan. at 770.

*Appropriateness*

The second step requires this court to determine whether the district court erred by not instructing the jury on the lesser included offense of simple battery. When determining whether error occurred, this court considers whether the instruction was legally and factually appropriate, employing an unlimited review of the entire record. *State v. McLinn*, 307 Kan. 307, 318, 409 P.3d 1 (2018).

The parties agree that an instruction on simple battery would have been legally appropriate. See *State v. Williams*, 308 Kan. 1439, 1457, 430 P.3d 448 (2018) (holding that assault and battery are lesser included offenses of aggravated assault and aggravated battery, respectively).

The parties offer competing reasons why the requested instruction was or was not factually appropriate. Hayes argues that although he offered a general denial that anything untoward took place that day, the issue of whether L.S. had any injuries was clearly an element of his defense. He pointed to the pictures taken the day after the incident showing no visible injuries to L.S. and her failure to seek medical attention. He argued the later text messages from the victim to Hayes did not detail what the level of injuries were or even when they occurred. In addition, the degree of actual injury should have been left to the jury to decide—either physical contact "in any manner whereby great bodily harm, disfigurement or death can be inflicted" or physical contact "in a rude, insulting or angry manner" K.S.A. 2015 Supp. 21-5413(a)(2) and (b)(1)(B).

7

The State argues the instruction was not factually appropriate because L.S. testified that Hayes repeatedly strangled her, threw her down the stairs, gouged her eye, and caused her to lose consciousness. It argues that faced with that evidence no jury would have bypassed an aggravated battery instruction and proceeded to simple misdemeanor battery when faced with Hayes' general denial.

The district judge has a mandatory statutory duty to instruct on a lesser included offense whenever there is some evidence which would reasonably justify a conviction of the lesser included crime. K.S.A. 2018 Supp. 22-3414(3); *State v. Gatlin*, 292 Kan. 372, 376, 253 P.3d 357 (2011). The court should give an instruction even if the evidence supporting that lesser offense is "weak or inconclusive." *State v. Nelson*, 291 Kan. 475, Syl. ¶ 1, 243 P.3d 343 (2010). And finally, it makes no difference if the lesser included offense may be "inconsistent with the defendant's theory of defense." *State v. Simmons*, 295 Kan. 171, Syl. ¶ 3, 283 P.3d 212 (2012).

To determine whether the district court should have given a lesser included offense instruction, this court views the evidence in a light most favorable to the defendant. *State v. Tahah*, 293 Kan. 267, 273, 262 P.3d 1045 (2011). Using that standard, we believe the instruction was factually appropriate. Based on the lack of any noticeable injuries on L.S., her failure to seek medical attention or contact the police, and vague texts from Hayes suggesting he hurt her, there was evidence to support a finding that Hayes physically battered L.S., but not in a manner by which he could have inflicted great bodily harm, disfigurement, or death. Even though he claimed nothing took place, Hayes did hotly contest the extent of L.S.'s injuries.

Thus, the instruction was factually appropriate, and the district court should have instructed the jury on simple battery as a lesser included offense. The court's failure to do so was error.

8

*Harmlessness*

Because we have found the court committed error in failing to instruct the jury on the lesser included offense of simple battery, we turn to whether the error requires reversal. To find reversible error, Hayes must firmly convince this court that had the court provided the jury with the lesser included instruction the result of the trial would have been different. See *Cooper*, 303 Kan. at 770.

To repeat, the main difference between battery and aggravated battery is the level of harm that could be inflicted. Simple battery merely requires physical contact "in a rude, insulting or angry manner" while aggravated battery requires physical contact "in any manner whereby great bodily harm, disfigurement or death can be inflicted." K.S.A. 2015 Supp. 21-5413(a)(2) and (b)(1)(B). So our question is whether, based on the evidence presented at trial, could a jury have reasonably found the elements of simple battery existed to the exclusion of the elements of aggravated battery? We believe so. Had it been given the choice, the jury could have found that L.S. suffered bodily harm rather than great bodily harm and that the harm was not inflicted in a manner that could have resulted in great bodily harm, disfigurement, or death. As a result, we find the district court's instructional error was not harmless.

We acknowledge there was ample evidence to support a conviction of aggravated battery. And the decision of counsel not to request an instruction on simple battery may have been a strategic one, although the State does not argue that here. But that is not the issue before us. The issue is whether Hayes was denied a fair trial because the judge failed to give a legally and factually appropriate jury instruction which denied the jury the option of considering the lesser included offense of battery. Although we do not weigh the credibility of witnesses in this analysis, there was no evidence so damning as to prevent a rational juror from believing that L.S. suffered harm at the hands of Hayes, but not in a way that could have resulted in great bodily harm, disfigurement, or death. See

9

*Gatlin*, 292 Kan. at 377-78. The defense took great pains to point out during closing argument the lack of any physical evidence the next day to corroborate L.S.'s description of an extremely brutal attack. The evidence was far from overwhelming. The jury acquitted Hayes of criminal threat (for threatening to kill L.S. and her dog) and aggravated intimidation of a witness (for preventing her from calling the police), each of which L.S. testified occurred.

The dangers inherent in the failure to give a legally and factually appropriate lesser included offense instruction is pronounced in a case like this one—when the evidence is not overwhelming and there is no independent corroboration of witness testimony. The jury faces an all or nothing choice and believing the victim was harmed may prefer conviction over acquittal. We believe there is a real possibility that is what could have occurred here.

Because we are reversing Hayes' conviction and sentence and remanding the case to the district court, we need not address the other trial and sentencing errors raised by Hayes.

Reversed and remanded.