NOT DESIGNATED FOR PUBLICATION

No. 113,100

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RICKY JAN MILLER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Lyon District Court; W. LEE FOWLER, judge. Opinion filed June 24, 2016. Affirmed in part and dismissed in part.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant.

*Stefani K. Hepford*, assistant attorney general, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, P.J., SCHROEDER, J., and JEFFREY E. GOERING, District Judge, assigned.

*Per Curiam*: Ricky Jan Miller appeals his jury conviction for mistreatment of a dependent adult and conspiracy to commit mistreatment of a dependent adult alleging the following trial errors: (1) evidence was improperly admitted in violation of K.S.A. 2015 Supp. 60-455; (2) no jury instruction was given defining undue influence and false representation; (3) the possibility of a collection fee being imposed created an illegal sentence; and (4) cumulative error. We have examined the alleged errors and find none. Miller also claims the district court improperly denied his motion for a downward durational departure of his sentence. We find we have no jurisdiction to review his

1

sentence and dismiss that portion of his appeal. Thus, we affirm in part and dismiss in part.

FACTS

Following reports by Presbyterian Manor of alleged elder abuse, the State charged Miller with mistreatment of a dependent adult, or in the alternative, theft, and conspiracy to commit mistreatment of a dependent adult, or in the alternative, conspiracy to commit theft. The State alleged Miller took advantage of his mother's—Viola Miller's—financial resources.

Prior to trial, the State filed a motion to admit evidence pursuant to K.S.A. 2015 Supp. 60-455. Specifically, it sought to introduce Orin Madden's testimony regarding a threat Miller made toward Viola's brother, Verl Bathurst, shortly after Miller was removed as Viola's power of attorney and her assets were placed into a trust. Miller opposed the motion arguing the testimony was irrelevant. He also argued the testimony would be unduly prejudicial. At the final pretrial hearing, the district court ruled the statement was admissible if the proper foundation was laid. Madden testified regarding the incident at trial. Miller did not object to Madden's testimony.

Miller submitted two proposed jury instructions defining undue influence based on PIK Civ. 4th. The district court found Miller's definitions were inappropriate because the case was criminal, not civil, and requested the parties attempt to define undue influence, false representation, and false pretense before the instruction conference. At the instruction conference, the State proposed a definition for undue influence based on *State v. Ahart*, No. 108,086, 2013 WL 5303521, at *4 (Kan. App. 2013) (unpublished opinion), (quoting *Cersovsky v. Cersovsky*, 201 Kan. 463, 467, 441 P.2d 829 [1968]), *rev. denied* 299 Kan. 1270 (2014).

2

The State argued, however, the district court did not need to define undue influence, false representation, or false pretense. Ultimately, the district court opted not to define the terms. Miller did not object.

The jury found Miller guilty of mistreatment of a dependent adult and conspiracy to commit mistreatment of a dependent adult. Prior to sentencing, Miller filed a motion for a durational departure arguing substantial and compelling reasons existed to depart. The district court heard and considered Miller's departure motion at his sentencing hearing, denied the motion, and imposed the presumptive sentence for both offenses. The district court also found Miller derived pecuniary gain from his crime and fined him $200,000. The journal entry of sentencing reflects a $200,000 fine. However, in an asterisk corresponding to the total amount of the fines, the journal entry also states: "All costs or assessments ordered will be subject to additional collection fee of 33% or more if not paid as ordered."

Miller timely appealed.

ANALYSIS

*Miller Failed to Preserve His Objection*

K.S.A. 60-404 precludes an appellate court from reviewing an evidentiary challenge absent a timely objection made on the record "and so stated as to make clear the specific ground of objection." Generally, any pretrial objection to the admission or exclusion of evidence must be preserved by contemporaneously objecting at trial. See *State v. Holman*, 295 Kan. 116, 127, 284 P.3d 251 (2012). The contemporaneous objection rule applies to evidence alleged to be admitted in violation of K.S.A. 2015 Supp. 60-455. *State v. Gaona*, 293 Kan. 930, 956, 270 P.3d 1165 (2012).

3

Prior to trial, the State filed a motion to admit evidence pursuant to K.S.A. 2015 Supp. 60-455. The district court ruled the statement was admissible if the proper foundation was laid. At trial, Madden testified: "Rick bulled up and told Verl he'd kill the old son-of-a-bitch—because Verl had went and seen an attorney and wanted to get everything lined out—and went off on [Viola], went off on Verl." Miller did not object to any of Madden's testimony. Under the contemporaneous objection rule, Miller failed to preserve the issue for appeal.

*No Requirement to Define Undue Influence and False Representation*

When addressing challenges to jury instructions, the standard of review is based upon the following analysis:

> "'(1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).'" *State v. Woods*, 301 Kan. 852, 876, 348 P.3d 583 (2015).

K.S.A. 2015 Supp. 22-3414(3) states, in relevant part:

> "No party may assign as error the giving or failure to give an instruction, including a lesser included crime instruction, *unless the party objects thereto* before the jury retires to consider its verdict stating distinctly the matter to which the party objects and the grounds of the objection unless the instruction or the failure to give an instruction is clearly erroneous. Opportunity shall be given to make the objections out of the hearing of the jury." (Emphasis added.)

4

Miller contends he has preserved the jury instruction issue for appeal because the discussion regarding the instruction occurred prior to instructing the jury. Simply submitting a proposed jury instruction is insufficient to preserve for appeal the district court's failure to give a requested instruction. *State v. Brammer*, 301 Kan. 333, 341, 343 P.3d 75 (2015). Miller did not object to the district court's decision not to give definitional instructions. Therefore, this court reviews for clear error.

An appellate court uses a two-step process in determining whether the challenged instruction was clearly erroneous. First, the court must consider whether there was any error by considering whether the instruction at issue was both legally and factually appropriate, employing an unlimited review of the entire record. Second, if the court finds error, it must assess whether it is firmly convinced the jury would have reached a different verdict without the error. *State v. Clay*, 300 Kan. 401, 408, 329 P.3d 484 (2014). The party claiming a clearly erroneous instruction has the burden to establish the degree of prejudice necessary for reversal. *State v. Williams*, 295 Kan. 506, 506-07, 286 P.3d 195 (2012).

Mistreatment of a dependent adult is, in relevant part: "[T]aking the personal property or financial resources of a dependent adult for the benefit of the defendant or another person by taking control, title, use or management of the personal property or financial resources of a dependent adult." K.S.A. 2015 Supp. 21-5417(a)(2). The taking of personal property or financial resources may be accomplished through "[u]ndue influence, coercion, harassment, duress, deception, false representation, false pretense or without adequate consideration to such dependent adult." K.S.A. 2015 Supp. 21-5417(a)(2)(A). After presenting its evidence, the State opted to proceed on the undue influence and false representations elements of mistreatment of a dependent adult and the district court only instructed the jury with those two elements. Therefore, any discussion of false pretense is moot.

Miller argues the district court should have given an instruction defining undue influence. However, Miller's brief does not identify which of the instructions presented to the district court defining undue influence the district court should have given. Instead, he simply argues:

"The facts of this case should have compelled the Court to craft definitional instructions because of the complexity of the relationships between Dalene Miller, Rick Miller, Viola Miller, and the Trust arrangement between the parties, and the multiple contradictory testimonies. The Court could have used the *Cersovsky* definition of 'undue influence', for example, or crafted an appropriate definition from the *Haneberg* case, *In re Estate of Haneberg*, 270 Kan. 365, Syl. ¶ 7, 14 P.3d 1088 (2000)."

Miller does not identify how any particular instruction was legally appropriate, merely that a definition was appropriate and even added at oral argument he had no specific recommendation on what the instruction should have been. Miller has abandoned the issue because he failed to adequately brief it. See *State v. Bowen*, 299 Kan. 339, 355-56, 323 P.3d 853 (2014) ("When a litigant fails to adequately brief an issue it is deemed abandoned.")

Miller's argument also fails on the merits. Prior to trial, Miller's proposed two definitional instructions for undue influence. The first proposed jury instruction, based on PIK Civ. 4th 124.09, read: "Rick Miller may be said to have exerted undue influence over Viola Miller if Viola Miller was deprived of her free will or agency, and Rick Miller's will was substituted in its place. Fair argument and persuasion, however, do not amount to undue influence." The second proposed jury instruction, based on PIK Civ. 4th 124.10, read:

"Undue influence may be found if each of the following elements are proven:
"1. That a confidential relationship existed between Viola Miller and Rick Miller;
"2. That Viola Miller was under the domination of Rick Miller; and

6

"3. That the transaction was induced by unfair persuasion."

These proposed jury instructions are not legally appropriate. The proposed undue influence instructions define the term in the context of defenses to contract formation. In addition, the notes on use for PIK Civ. 4th 124.10 indicate it "should only be used where the claim of undue influence by virtue of a confidential relationship is asserted."

Further, in *Ahart*, 2013 WL 5303521, at *4, a panel of this court found that a precise definition of undue influence was difficult because it must generally be determined by the facts of each case. Ahart challenged the constitutionality of the mistreatment of a dependent adult statute arguing it was unconstitutionally vague because unfair advantage and undue influence were not defined in the statute. However, the panel determined, "the mere fact that the terms 'unfair advantage' and 'undue influence' are not defined in the statute does not mean that a person of common intelligence cannot understand which conduct is prohibited." 2013 WL 5303521, at *4. The panel concluded that, based on the facts before it, a person with common intelligence could understand the concept of unfair advantage and undue influence and the statute was not unconstitutionally vague. 2013 WL 5303521, at *5. Based on the facts of this case, as in *Ahart*, a person with common intelligence could understand the concept of undue influence. The district court did not err when it found defining undue influence would provide no benefit for the jury.

At the instruction conference, Miller also proposed an instruction for "false representation" based on *State v. Finch*, 223 Kan. 398, 573 P.2d 1048 (1978). He argued the State "must prove that the victim was actually deceived, and relied in whole or in part upon the false representation." This instruction is not legally appropriate. *Finch* was a theft by deception case. In *Finch*, the Kansas Supreme Court held:

7

"[I]n order to convict a defendant of theft by deception under K.S.A. 21-3701(b) the [S]tate must prove that the defendant with the required intent obtained control over another's property by means of a false statement or representation. To do so the [S]tate must prove that the victim was actually deceived and relied in whole or in part upon the false representation." *Finch*, 223 Kan. at 404.

Naturally, a conviction for theft *by deception* requires deception. But false representation, in and of itself, does not require the victim to be deceived. In fact, K.S.A. 5417(a)(2)(A) lists both deception and false representation as possible ways to take the personal property or financial resources of a dependent adult. Miller's proposed jury instruction was not legally appropriate.

Even if the district court had erred by failing to give definitional instructions, the error would not have been reversible. Reversible error only occurs if the appellate court is firmly convinced the jury would have reached a different verdict without the error. *State v. Clay*, 300 Kan. 401, 408, 329 P.3d 484 (2014). Miller argues, "the decision of the jury *could* have been different" had the district court given definitional instructions. (Emphasis added.) He focuses his argument primarily on the perceived error of admitting evidence pursuant to K.S.A. 2015 Supp. 60-455 arguing:

"The jury was forced to rely on their 'perception' of Mr. Miller's character when deciding if Mr. Miller had unduly influenced Viola by the use of false pretense or false misrepresentation. Undefined, this left the jury to provide their own definitions, apply those to Mr. Miller's circumstances, and that, combined with the effect of the 60-455 evidence characterizing Mr. Miller as a potential killer, a violent man, and a man of irreversible bad character, absolutely led the jury down a predictable path."

His argument fails. First, the district court provided a limiting instruction for the evidence of the threat. Second, Miller points to no evidence showing the jury believed Miller was a potential killer, a violent man, or a man of irreversible bad character; he

8

simply concludes the jury must have believed that since the jury convicted him. Third, the State presented abundant evidence Viola was incapable of managing herself or her finances, and evidence illustrating how Miller benefitted—primarily in the form of a new truck and new home—from Viola's assets while she remained in a care home where the bill was not being timely paid, she needed dental work, and her medicine was not being timely provided for her. Miller has not met his burden showing the jury would have reached a different verdict had the instructions been included.

*Miller Received a Presumptive Sentence; We Lack Jurisdiction*

Miller also appeals the denial of his motion for durational departure arguing there are substantial and compelling reasons to depart. K.S.A. 2015 Supp. 21-6820(c) provides that an appellate court shall not review on appeal a sentence for a felony conviction that is (1) within the presumptive sentence for the crime, or (2) the result of a plea agreement between the State and the defendant which the trial court approved on the record. Under K.S.A. 2015 Supp. 21-6820(c), appellate courts lack jurisdiction to review challenges to presumptive sentences. *State v. Sprung*, 294 Kan. 300, 317, 277 P.3d 1100 (2012). The district court sentenced Miller to the presumptive sentence for both mistreatment of a dependent adult and conspiracy to commit mistreatment of a dependent adult. We do not have jurisdiction to consider Miller's appeal of the denial on his motion for durational departure, and we dismiss this portion of his appeal.

*The Collection Fee Does Not Create an Illegal Sentence*

The journal entry of sentencing imposed a 33% collection fee if Miller's fine was not paid. Miller asserts the imposition of a collection fee constitutes an illegal sentence because it does not comply with the sentencing statute. The State responds that K.S.A. 2015 Supp. 20-169 (formerly K.S.A. 2014 Supp. 75-719) authorizes the district court to

9

charge a collection fee when the defendant fails to pay any amount ordered by the court. As a result, Miller's sentence is not illegal.

"An 'illegal sentence' is: (1) a sentence imposed by a court without jurisdiction; (2) a sentence that does not conform to the applicable statutory provision, either in character or the term of authorized punishment; or (3) a sentence that is ambiguous with respect to the time and manner in which it is to be served." *State v. Taylor*, 299 Kan. 5, 8, 319 P.3d 1256 (2014). Whether a sentence is illegal within the meaning of K.S.A. 22-3504 is a question of law over which the appellate court has unlimited review. 299 Kan. at 8.

Pursuant to K.S.A. 2015 Supp. 21-6604(a)(2), when a person has been found guilty, the court may "impose the fine applicable to the offense and may impose the provisions of subsection (q)." K.S.A. 21-6611(a)(2) authorizes a fine not to exceed $300,000 for severity level 4 felonies. K.S.A. 2015 Supp. 21-6604(q) indicates the court may authorize payment of the fine in installments or may order the person to perform community service in lieu of payments; it does not mention collection fees. However, K.S.A. 2015 Supp. 20-169(a) states:

> "The judicial administrator is authorized to enter into contracts in accordance with this section for collection services for debts owed to courts or restitution owed under an order of restitution. On and after July 1, 1999, *the cost of collection shall be paid by the defendant as an additional court cost in all criminal, traffic and juvenile offender cases where the defendant fails to pay any amount ordered by the court and the court utilizes the services of a contracting agent pursuant to this section*. The cost of collection shall be deemed an administrative fee to pay the actual costs of collection made necessary by the defendant's failure to pay court debt and restitution." (Emphasis added.)

Fines are specifically included in the definition of "debts owed to courts." K.S.A. 2015 Supp. 20-169(b)(4).

The district court fined Miller $200,000, which is well under the amount authorized by statute. The journal entry of sentencing also reflects a $200,000 fine. However, in an asterisk corresponding to the total amount of the fines, the journal entry states: "All costs or assessments ordered will be subject to additional collection fee of 33% or more if not paid as ordered." This provision appears to be pursuant to K.S.A. 2015 Supp. 20-169, though, as the State admits, the statutory maximum for the collection fee is 33%.

Further, as the State's brief indicates, a 33% collection fee on the $200,000 fine only amounts to $66,000. Even if the district court assessed the $66,000 collection fee, Miller would owe $266,000, still well within the $300,000 fine authorized by K.S.A. 2015 Supp. 21-6611(a)(2). Our reading of the collection fee and asterisk on the journal entry is that the district court was giving Miller notice the fine would be subject to the collection fee if it was not timely paid.

The collection fee is authorized by statute; it is not an illegal sentence.

*No Cumulative Error*

Finally, Miller claims he is entitled to a new trial due to cumulative error. However, the court will find no cumulative error when the record fails to support the errors defendant raises on appeal. *State v. Betancourt*, 299 Kan. 131, 147, 322 P.3d 353 (2014). Miller's claim of cumulative error must fail because, as discussed above, the record does not support any of Miller's claims of error.

Affirmed in part and dismissed in part.